**220 A.2d 226.**

STATE *vs.* BIAGIO PELLA *et al.*

JUNE 15, 1966.

PRESENT: Roberts, C. J., Paolino, Powers and Joslin, JJ.

ROBERTS, C. J. This is an indictment wherein three defendants are charged with having conspired to defraud the city of Providence. After a trial to a jury had begun in the superior court, a third defendant withdrew his plea of not guilty, pleaded nolo contendere to the indictment,

and testified on behalf of the state during subsequent proceedings. The jury thereafter found the remaining defendants guilty, and their subsequent motions for new trials were denied by the trial justice. Each defendant is now prosecuting in this court a bill of exceptions to certain rulings and decisions of the court below.

The defendants contend that the court's denial of their motions to excuse two jurors for cause constituted prejudicial error. They argue that these jurors on the voir dire disclosed that they had "formulated a fixed opinion" on the basis of pretrial publicity and, therefore, were not qualified by reason of such opinions to serve as jurors. The constitutional right to a trial by jury guarantees a trial by an impartial jury. In *Irvin* v. *Dowd,* 366 U. S. 717, 722, the court said: "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process."

One challenging the qualification of jurors on the ground that they do not stand indifferent has the burden of establishing this want of indifference. " 'The affirmative of the issue is upon the challenger. Unless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside. . . . If a positive and decided opinion had been formed, he would have been incompetent even though it had not been expressed.' " 366 U. S. 723. This court has long adhered to this view as to the burden of proof. In *State* v. *Greene,* 74 R. I. 437, at page 442, we said that in the disqualification of jurors for cause during examination on the voir dire, "much must be left to the discretion of the trial justice and where no abuse of discretion is shown conviction will not be reversed."

In support of their contention, defendants argue that

each juror had testified on the voir dire that about a year before the trial began they had read news items which were concerned with an apparently nonexistent employee of the department of public works. These news items charged that such person had been carried on the payroll of that department for some years and that checks reflecting the payment of wages to him had been regularly issued. Further information went to relate to the disposition of such pay checks after their issuance. It is clear from the transcript that each potential juror conceded that he had formed an opinion at that time that such employee was nonexistent and that in all the circumstances someone must have been guilty of fraud. In each instance the court, after substantial inquiry had been made into the present state of mind of each of these jurors, had denied the motions to dismiss for disqualification by reason of the prior opinions.

In *Irvin* v. *Dowd, supra,* it is stated as a basic principle of law that the mere existence of an opinion as to guilt or innocence, standing alone, is not sufficient to disqualify a potential juror. In that case at page 723 the court said: "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." The same principle has long been followed in this state, the test being whether the opinions or impressions are such as could be laid aside by the jurors at a trial "and which would not prevent them from giving to the legal evidence, produced before them at the trial, its proper weight and effect." *State* v. *Jacques,* 30 R. I. 578, 583. This view we reiterated in *Kelley* v. *City Council,* 61 R. I. 472, 482: "On the other hand, a juror, even in a criminal case, is not disqualified merely because he may entertain an opinion on the matter in dispute, un-

less his opinion is so fixed and settled as to require evidence to remove that opinion before he could consider the legal evidence in the case impartially and give to such evidence its proper weight and effect."

In the instant case each juror testified on the voir dire that he could sit on the case and, on the evidence presented and the law given to him by the court, decide impartially between defendants and the state. Each testified also as to his acceptance of the doctrine of the presumption of innocence, of the inconclusiveness of an indictment on the question of defendants' guilt, and his understanding that the failure of defendant to take the stand to testify in his defense is not to be considered as evidence of guilt. A reading of the transcript discloses that despite some rather subtle interrogation on these issues, each of the jurors steadfastly maintained that despite his prior notions or opinions he was capable of deciding the case impartially. The trial justice had the opportunity to observe these jurors as they testified on the voir dire, and from his comments in denying the motion it is clear that he gave full credibility to their statements concerning their impartiality and their ability to put aside such prior opinions and decide the case on the law and evidence adduced at trial. In these circumstances we are unable to conclude that the trial justice abused his discretion in denying the motions to excuse, and these exceptions of defendants are overruled.

We turn to defendants' exceptions to the denial of their several motions to pass the case and conclude that these are clearly without merit. Three such motions to declare mistrial were made, and all were denied. However, it is our opinion that the third motion, which was made on the morning of July 1, 1964, is inclusive of the grounds urged to support the prior motions to pass. This particular motion was made after the publication on June 30, 1964 of a story relating to the effect of pretrial publicity in criminal cases on the availability of completely impartial jurors.

This article, when read in its entirety, can hardly be termed to have been prejudicial to defendants or to their counsel, as was argued. To the contrary, the article deals with the problem "of how to find unbiased jurors for a case which has received widespread publicity." The writer thereafter discusses the issue of pretrial publicity and its effect on the impartiality of the potential jurors who are subject to such publicity. We cannot escape the conclusion that the thrust of this article is such that, when read by reasonable men, it would direct their attention and sympathy with the plight of the criminal defendants in such circumstances, and it is our opinion that the persons selected for duty on that jury would similarly construe the thrust of the article.

The writer noted that all jurors selected in the instant case conceded on the voir dire that they had some prior knowledge as to the details of the case and then said, significantly in our opinion: "Yet the nine women and five men on the panel all said that they could free their minds from any prior opinions and could arrive at a fair and impartial verdict based on the evidence presented at trial * * *." We are unable to agree that this sort of comment as to potential jurors' knowledge at the time they were being examined on the voir dire could reasonably be held to have inflamed the jury against these defendants or against counsel representing them. We are of the opinion that reasonable men, reading this article, would recognize its clear concern for the adverse effect of pretrial publicity on the right of defendants in criminal cases to be tried by an impartial jury. Because we take this view, we overrule these exceptions.

In the course of trial the court, over objection of defendants, admitted into evidence certain employment records and canceled checks, some of which exhibits reflected transactions that had occurred prior to the time of the conspiracy set out in the indictment. While in this court de-

fendants contend that the admission of these records predating the indictment was inherently prejudicial, it is clear from an examination of the transcript that the court's ruling was based on a question as to the competency of these records as legal evidence in view of the remoteness of the transactions. It is our opinion that the trial justice correctly concluded that the records were not rendered incompetent by reason of remoteness. They had some probative force on the issues at trial and were for that reason admissible. In their brief defendants refer us to no authority or case to the contrary. These exceptions are without merit.

The defendants are pressing also exceptions to the alleged overruling of their objection to the admission of the rebuttal testimony of a member of the police department. This testimony related to a discussion between the police officer and one of the defendants at the police station shortly after that defendant's apprehension. The first objection was made to an inquiry as to what defendant had told the officer during such conversation. This objection was overruled, and the witness proceeded to tell of remarks he attributed to defendant. At that time defendant made the second objection to the admission of this testimony, and at this point the court suggested that the jury be taken from the courtroom, a proceeding to which defendant agreed.

There was thereafter considerable testimonial discussion concerning the alleged conversation between the police officer and defendant, all in the absence of the jury. At the conclusion of this discussion the court ordered the jury brought back into the courtroom and in its presence granted defendant's motion to strike all the evidence adduced as' to such conversation, including that which was heard by the jury. The court then instructed the jury that it was "directed to disregard the question and the answer in their deliberations." The defendant thereupon said: "Thank you, Your Honor."

It appears from the record that the cautionary instruction was given to the jury immediately upon its return to the courtroom and that the only testimony that had been adduced before the jury concerning such conversation was stricken from the record on defendants' motion at the time the cautionary instruction was given. The record discloses that no objection to the cautionary instruction as given was made and that no request was made by defendants for any additional cautionary instruction. We are unable to perceive then that any pertinent exception is before us in these circumstances, and for that reason the exceptions here made are held to be without merit.

The defendants requested the court to instruct the jury as follows: "The jury must receive and consider the testimony of James Martone with caution." The James Martone referred to is the defendant who, during trial, withdrew his plea of not guilty, entered a plea of nolo contendere, and testified in behalf of the state. The court denied this request, and defendants now press their exception to such denial.

In support thereof defendants argue that generally testimony of an accomplice is to be carefully scrutinized by a jury, this being particularly so when it is not corroborated by other evidence. There is, it appears, a line of authorities holding that an instruction cautioning juries as to the reception of the testimony of accomplices is proper and this particularly in jurisdictions where the testimony of such accomplices, where not corroborated, will not sustain a conviction. However, in this state the view of the common law prevails, and the testimony of an accomplice, even though entirely without corroboration, is sufficient to sustain a conviction. *State* v. *Riddell*, 38 R. I. 506, 513. The transcript discloses that the court here so instructed the jury after informing it that Martone's "testimony should be considered by you as that of any other witness, and given whatever weight you believe it is entitled to." No

exception was taken to this instruction, which thus becomes the law of the case.

It might well be that the substance of the instruction sought by defendants here could properly be given a jury in an appropriate context, inasmuch as to so instruct the jury could not be prejudicial to a defendant in a criminal case. But to refuse to give the precise instruction sought by defendants here, which would be construed by the jury as nothing more than a judicial impeachment of the testimony of Martone, could hardly constitute prejudicial error against these defendants. It is settled that in this state the court is under strict obligation to avoid disclosure of its opinion as to the weight of evidence or the credibility of witnesses, the court being afforded an opportunity to do so in its decision on motion for new trial. *Pompei* v. *Cassetta*, 63 R. I. 74, 78. We find this exception without merit.

The defendants also press their exception to the denial of their motions for new trials. The specification of error upon which this exception is predicated raises but a single question, that being whether the trial justice's remarks concerning his prior knowledge of the qualifications of an expert witness invalidated his rejection of the testimony she gave at trial. We cannot agree that they do. It is the duty of the trial justice on this motion to pass upon the weight of the evidence and credibility of witnesses in an exercise of his independent judgment. This he clearly did in the instant situation, simply prefacing his remarks by stating that he had previously been acquainted with the work and reputation of the witness but that he "just did not believe her testimony in this case. She was evasive and glib on cross examination, and came up with some flowery answers that said nothing. The jury apparently gave no weight to her testimony, and neither do I." We are unable to perceive that this discloses partiality on the part of the trial justice in passing on the credibility of

this witness. To the contrary, it indicates a clear-cut, forthright statement that at this trial her testimony was "evasive and glib" and that he was giving it no weight. We see no error in this action on the part of the trial justice and conclude that this exception is without merit.

All of the defendants' exceptions briefed and argued are overruled, and the case is remitted to the superior court for further proceedings.

*J. Joseph Nugent,* Attorney General, *Corinne P. Grande,* Special Assistant Attorney General, for State.

*Curran & Friedman, Charles A. Curran, Harold I. Kessler,* for defendants.