258 A.2d 791.

STATE *vs.* GEORGE HULL.

NOVEMBER 20, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J.   George Hull was tried and convicted before a judge and jury in the Superior Court on an indictment which charged him with breaking and entering a building in the nighttime with intent to commit larceny.   Before us the only exceptions he presses are to instructions given to the jury.

It appears that a break occurred at Colton's Pharmacy in the city of Providence sometime between 10 and 11:45 o'clock on the night of December 16, 1966.   Two police officers, each patrolling in a cruiser, received radio calls advising that the break had occurred and were ordered to investigate.   One testified that upon arrival he saw a man whom he identified as defendant jump out of the pharmacy window to the sidewalk with his arms cradled, as if he were carrying something; and that the man immediately took flight and was not apprehended until two days later.   The testimony of the other was substantially the same, except that, when this police officer arrived at the scene, the man was standing in front of the window rather than jumping out of it.   The defendant offered an alibi.   His story was that he had been at his mother's home from about eight o'clock on the night of the break, until the following morning.   This alibi was substantially corroborated by his mother and sister.   The sister, however, was unable to state

unequivocally that defendant had remained continuously throughout the night at the mother's home, or that at the time of the break he was in fact asleep in a room off the kitchen as he had testified.

The defendant's first assignment of error is to that portion of the charge where the trial justice told the jury that "You are not concerned with where George Hull was at eight o'clock in the evening; you are concerned with where he was at eleven-thirty p.m." That instruction, defendant argues, directed the jury's attention to the possibility that he might have left his mother's home without the knowledge of his mother and sister. If that were its principal effect, then perhaps the charge would be argumentative, and thereby violate the requirement that a trial justice be impartial in his instructions to the jury. But this is not the case.

Here what was decisive was not where defendant was some hours before the break, but where he was at the time when the two police officers identified him as having been at the scene. That, after all, was the principal issue in the case, and it was the one on which the jury were required to concentrate their attention in order to resolve the conflict between the state's testimony and defendant's alibi. To remind the jury of these considerations was merely to point to the issue in the case. This was the trial justice's duty, *State* v. *Sliney,* 101 R. I. 423, 224 A.2d 603, and in performing it he did not overemphasize the possibility that defendant's alibi might not be airtight, but instead said only what was germane to a proper consideration of the issue. See *State* v. *Smith,* 70 R. I. 500, 514, 41 A.2d 153, 160.

The defendant's remaining exception is to an instruction which was given when the jury, after deliberating for approximately an hour and a half, returned to the courtroom and advised the trial justice that they had not reached an agreement. Thereupon the trial justice stated that he would

be derelict in his duty if he were to accept a disagreement from a jury which had deliberated for so short a period of time, and he suggested that they return to the jury room and carefully reassess the evidence. Then, in his only direct reference to any of the testimony, he charged in the following language:

"I don't want anyone to vote against his conscience. Recall what the testimony was in this case, and think not only of what was said here, but who said it. Did the particular witness have an interest in the outcome of this case that would make you wonder about the truthfulness of that particular witness?"

The defendant does not question that a trial justice may call to the jury's attention the fact that a defendant has an interest in the outcome of the litigation. What he does argue is that the challenged instruction singled out his testimony for careful scrutiny and thereby impressed the jury with the idea that the trial justice was questioning his credibility and suggesting that his testimony should not weigh heavily with them. If this were so, then, of course, the instruction would be erroneous, for a trial justice invades the province of the jury if he expresses an opinion on credibility or conveys to the jury his impressions of the weight they should give to any of the testimony. *State* v. *Harris,* 89 R. I. 202, 209-10, 152 A.2d 106, 110-11; *State* v. *Gallogly,* 47 R. I. 483, 486, 134 A. 20, 21-22.

Whether the permissible bounds were exceeded here is to be judged not by how we as a reviewing court read the challenged instruction from the printed page, but on how ordinarily intelligent lay persons sitting in a jury box would have understood it, as they listened to it within the context of the whole charge at the close of the trial. *State* v. *Reid,* 101 R. I. 363, 366, 223 A.2d 444, 446-47; *State* v. *Esposito,* 73 R. I. 94, 103-04, 54 A.2d 1, 6.

When we look at what is now challenged as part of an entirety, rather than in isolation, we find that while the

jury were told to inquire about whether a particular witness was interested in the outcome of the case, they were also admonished that they and not the trial justice were responsible for determining which witnesses were credible. In addition, they were instructed that in their search for truth they should not only "examine the witnesses who testified for the defendant", but that they should also scrutinize the testimony of the police officers to determine whether they had mistakenly identified defendant as the man responsible for the break and ascertain whether one of them might have said " "* * * something that was not true for the purpose of getting a conviction against this particular defendant * * *.' "[1]

When we view the charge within this context, we are persuaded that ordinarily intelligent lay persons sitting as jurors would have understood the suggestion that they inquire whether or not a particular witness had an interest in the outcome of the case as referable to the police officers who testified for the State as well as to the defendant's testimony. Thus, they would not have understood it as an expression by the trial justice of his opinion of the weight to be given to any of the testimony or as a comment on the credibility of any particular witness.

---

[1]The text of this instruction was:

"Some witnesses testified for the State who were police officers. I ask you to scrutinize their testimony, and say to yourselves, 'Did these men have a good opportunity to identify this defendant?' Secondly, 'Are they mistaken, or are they not?' or, 'Is there any possibility that one of them would have told you something that was not true for the purpose of getting a conviction against this particular defendant?' Now you are the judges of the credibility of the witnesses.

"I ask you also to examine the witnesses who testified for the defendant —the defendant himself, and his sister, and his mother. Certainly the defendant has an interest in the outcome of this case. I ask you to consider these people who have testified for the defense, as to whether or not you find from all of the evidence that they are telling you the truth or not. This is the function of the jury, not the judge."

The defendant's exceptions are overruled, and the case is remitted to the Superior Court for further proceedings.

Motion for reargument denied.