**STATE**

v.

**Jeffrey P. APTT.**

No. 80–584–C.A.

Supreme Court of Rhode Island.

Feb. 17, 1982.

Dennis J. Roberts, II, Atty. Gen., C. Daniel Schrock, Sp. Asst. Atty. Gen., for plaintiff.

Stephen P. Nugent, Providence, for defendant.

## OPINION

MURRAY, Justice.

The defendant, Jeffrey P. Aptt, was convicted of one count of assault after a jury trial in the Superior Court. His motion for a new trial was denied, and he is before us now on appeal.

Conflicting testimony was presented describing the chaotic sequence of events leading up to defendant's arrest and conviction. Nevertheless, a summary of the salient facts provides a fairly complete account of defendant's actions.

Late in the evening on July 17, 1979, Officer Edward Randall of the Pawtucket police department responded to a call to

investigate an automobile accident on Kenyon Avenue. When he arrived, he saw a car (which had apparently just struck a wall) parked on the wrong side of the street. Three of its tires were flat and, despite the repeated, vehement requests of the car owner, Alfred Perrault (Perrault), that his car not be towed, Officer Randall called a tow truck to move the disabled vehicle. When the tow truck arrived, Perrault became very angry and tried to keep his car from being moved.

Meanwhile, the noise of the accident and the ensuing dispute between Perrault and Officer Randall had attracted a sizable crowd. The defendant and his wife Dianne Appt (Perrault's sister) were among the patrons of a nearby tavern who had been attracted by the disturbance. At about the same time Officer John Whiting and Sergeant Jeremiah O'Connor arrived at the scene to assist Officer Randall.

When Perrault became abusive, Officers Randall and Whiting managed, with considerable difficulty, to arrest and handcuff him. Dianne, whose left leg was in a full cast, was upset by the arrest of her brother. According to the testimony of several eyewitnesses, Dianne swung one of her crutches at Officer Randall and struck him in the back. Officer Randall later noted in his

statement that it was at this point that "all hell broke loose."

Sergeant O'Connor, who had seen Dianne strike Officer Randall, approached her, telling her that she was under arrest. As the sergeant reached forward toward Dianne, defendant struck him in the face.[1] Sergeant O'Connor and defendant then fell to the ground in a struggle during which the sergeant was kicked from above by other brawlers. Officers Whiting and Randall then came to his aid and together they managed to subdue defendant and the other combatants.

On September 19, 1979, the state filed a criminal information in the Superior Court charging defendant with one count of possession of brass knuckles, one count of assault with a dangerous weapon, and one count of assault.[2] The defendant's motion to dismiss the first of these counts was granted at the start of his trial. On April 18, 1980, after a trial in the Superior Court, the jury returned a verdict of guilty on the lesser included offense of simple assault as to count 6 and a verdict of not guilty as to count 7.

The first issue raised by defendant concerns the trial justice's instructions on assault.[3]

---

1. There was conflicting testimony about whether or not defendant was wearing brass knuckles when he struck Sergeant O'Connor. The defendant testified that he did not in fact strike the sergeant but that he merely jumped on him in an effort to defend his wife.

2. The defendant was tried with his wife and codefendant, Dianne, on a seven-count information which charged the following: count 1—Dianne, assault with a dangerous weapon (a crutch); count 2—Dianne, carrying a pistol without a license; count 3—Dianne, assault with a dangerous weapon (a crutch); count 4—Dianne, assault with a dangerous weapon (a pistol); count 5—Dianne and defendant, possession of brass knuckles; count 6—defendant, assault with a dangerous weapon (brass knuckles); count 7—defendant, assault.

On April 17, 1980, after both the state and the defense had rested, Dianne's motion for a judgment of acquittal was granted as to count 2. On April 18, 1980, the jury returned a verdict of not guilty on the remaining counts against Dianne Aptt.

3. The trial justice gave the following definition and illustration of assault and assault with a dangerous weapon:

"Now let us come to the definition, what do we mean by the term 'assault'? An assault is an unlawful attempt, coupled with a present ability and with the specific intent to commit a wrongful act by means of physical force upon the person of another. I will read it again. An assault is an unlawful attempt, coupled with a present ability and with the specific intent to commit a wrongful act by means of physical force upon the person of another.

"You have all heard the expression, 'assault and battery.' When you're talking about an assault, you don't have to have any bodily contact with the person who is being attacked. If I were to raise my fist and shake it in the face of someone, and put that person in apprehension of danger, that would be an assault. If I actually continued through and struck the person, that would be a battery. So that every battery really includes an assault, but every assault doesn't necessarily

The defendant argues that (1) the trial justice failed to distinguish between civil and criminal assault, and (2) the instruction on assault with a dangerous weapon failed to mention the necessity of showing present actual ability to inflict harm.

■ The defendant bases his first argument on the following language from the instruction on assault: "If I were to raise my fist and shake it in the face of someone, *and put that person in apprehension of danger,* that would be assault." (Emphasis added.) The defendant is correct in his observation that the victim's apprehension of danger is not an element of criminal assault. In *State v. Boudreau,* 113 R.I. 497, 500–01, 322 A.2d 626, 628 (1974), we discussed at length the distinction between the tortious and criminal forms of assault and held that "[t]he guilt or innocence of a person charged with assault depends entirely upon what the wrongdoer does and intends and not at all upon what the other apprehends, or does not apprehend."

■ The trial justice's mention of the victim's apprehension as an element of criminal assault was error, but the circumstances of this case clearly indicate that defendant was in no way prejudiced. Before reading the illustrative passage of which defendant complains, the trial justice twice read to the jury a definition of assault which clearly and correctly enumerated the elements of the offense. If the trial justice's reference to the victim's apprehension did in fact suggest to the jury that this was an element of the crime charged, then this would have worked to the benefit of defendant. *See Coxe v. State,* 281 A.2d 606, 608 (Del.1971). It is not enough for a defendant to raise the issue of judicial error; the error must also have had an adverse effect on the defendant's case. If, as in this case, a defendant is not prejudiced, then the error is not reversible. *See Palmigiano v. Mullen,* 119 R.I. 363, 375, 377 A.2d

242, 248 (1977); *State v. Brown,* 96 R.I. 236, 242, 191 A.2d 353, 354 (1963).

The defendant also urges us that the trial justice committed reversible error in his instruction on assault with a dangerous weapon. However, since defendant was found not guilty on this count, we shall not discuss the merits of this argument.

The defendant's second claim of error concerns the admission of evidence of a prior conviction for assault. The defendant contends that this evidence was unnecessary and that the manner in which the evidence was presented was so prejudicial as to constitute reversible error.

In 1974, defendant was convicted of assaulting a North Attleboro, Massachusetts, police officer. In an attempt to impeach defendant's credibility, the state questioned him about this conviction:

"Q. And are you the same Jeffrey Aptt who on April 19, 1974, was convicted and received six months at the House of Corrections, suspended, and one year probation for the crime of assaulting and battering a police officer in Massachusetts?

MR. NUGENT: Objection.

THE COURT: Objection is overruled. You may answer.

"A. I don't remember anything of that charge, sir.

"Q. So your answer is no, you do not remember?

"A. I don't remember anything of that particular charge.

\* \* \* \* \* \*

"Q. Mr. Aptt, the only question I have for you is, now that you have had a chance over this recess to refresh your recollection, do you recall now being convicted in the District Court for the Commonwealth of Massachusetts back on April 15 of 1974 of assault on a police officer?

include a battery. So when a person is accused of assault with a dangerous weapon, namely, a pistol, for instance, there doesn't have to be any contact made.

"If you are satisfied that under the definition of assault as explained there was such

an assault and it was accomplished with a dangerous weapon, either a crutch or a pistol or brass knuckles, that would constitute an assault with a dangerous weapon; and that is the definition of assault with a dangerous weapon."

"A. Yes, I think so. I'm not—I think so."

Arguing that defendant's equivocal reply amounted to a denial, the state sought to impeach defendant's credibility by calling as a witness Sergeant Ronald Robichaud of the North Attleboro police department. Sergeant Robichaud was the victim of the 1974 assault for which defendant had been convicted, and it was through his testimony that the prior conviction was introduced into evidence. The defendant contends that this was unnecessary because he did not actually deny the conviction. He argues further that even if his response could have been considered a denial, the state employed a highly improper method of introducing evidence of a prior conviction. The impact on the jury of a uniformed, armed police officer testifying about defendant's conviction for an assault of which the officer himself was the victim, was so prejudicial, argues defendant, that the conviction must be reversed.

■ The practice in this state is that a witness may be impeached by evidence of a prior conviction, regardless of the possible prejudice or of whether the conviction was for a crime relating to dishonesty or false statement.[4] *State v. Lombardi*, 113 R.I. 206, 208, 319 A.2d 346, 347 (1974). This rule is limited only by the requirement that the conviction not be too remote in time and that the jury be instructed immediately on the limited purpose for which such evidence is to be considered. *Id.* at 209, 319 A.2d at 347; *Mercurio v. Fascitelli*, 107 R.I. 511, 517, 268 A.2d 427, 430–31 (1970). These basic elements of admissibility were present in the case now before us. The 1974 conviction was clearly not too remote to be admitted at trial in 1980, and the trial justice immediately and thoroughly cautioned the jurors about the limited purpose for which they were to consider the evidence. Furthermore, defendant's response to the initial questioning about this conviction was sufficiently equivocal to warrant the admission of rebuttal evidence.

■ The state's method of introducing this evidence was unorthodox, but this is certainly not sufficient grounds for reversal. In this jurisdiction, a prior conviction is commonly shown by cross-examination of a defendant as well as by introduction of documentary evidence. *See State v. Wallace*, R.I., 428 A.2d 1070 (1981); *State v. Pope*, R.I., 414 A.2d 781 (1980); *State v. Bennett*, R.I., 405 A.2d 1181 (1979). However, neither statute nor case law conditions admissibility upon the use of any particular form of evidence.

■ At oral argument, the state explained that the clerk of the Massachusetts court had been expected to testify about defendant's conviction record. Sergeant Robichaud was only called as a witness because of the unexpected unavailability of the clerk, and consequently there was no showing of bad faith on the part of the state. We hold therefore that the trial justice did not err in admitting the testimony of Sergeant Robichaud to impeach defendant's credibility.

The next matter before us is the following instruction given by the trial justice when Sergeant Robichaud's impeachment testimony was admitted:

"Once again, ladies and gentlemen, I would point out to you that the only reason for bringing in the last officer was for the purpose of identifying the particular conviction that the prosecutor mentioned as to Jeffrey Aptt. Mr. Aptt in his testimony did not admit that he remembered that he was the person who did that, *and so there would be no question about the identity, the prosecutor has produced this last witness for that purpose only.* I am saying to you that *the evidence as to a previous conviction by the defendant is admissible only for*

---

4. General Laws 1956 (1969 Reenactment) § 9–17 15, "Effect of conviction for crime," provides:

"No person shall be deemed an incompetent witness because of his conviction of any crime, or sentence to imprisonment therefor; but shall be admitted to testify like any other witness, except that conviction or sentence for any crime or misdemeanor may be shown to affect his credibility."

*the purpose of impeaching his credibility, if it is to be impeached.* But it has no bearing whatsoever on the guilt of the defendant as to the charges which are pending before this jury in this case." (Emphasis added.)

■ The defendant claims that the trial justice's references to the issues of identity and credibility were a comment on the weight of the evidence and actually indicated to the jury that defendant's credibility had in fact been impeached. The defendant directs our attention to *State v. Pella*, 101 R.I. 62, 70, 220 A.2d 226, 231 (1966), wherein we stated that "[i]t is settled that in this state the court is under strict obligation to avoid disclosure of its opinion as to the weight of evidence or the credibility of witnesses * * *." To communicate such an opinion to the jury would result in a clear invasion of the province of the jury. *State v. Goff*, 107 R.I. 331, 339, 267 A.2d 686, 690 (1970); *State v. Harris*, 89 R.I. 202, 209–10, 152 A.2d 106, 110–11 (1959).

■ The defendant's arguments notwithstanding, we find no violation of the above-cited principles. It is well settled that in determining whether the trial justice has invaded the province of the jury, his instruction is to be evaluated "not by how we as a reviewing court read the challenged instruction from the printed page, but on how ordinarily intelligent lay persons sitting in a jury box would have understood it, as they listened to it within the context of the whole charge at the close of the trial." *State v. Hull*, 106 R.I. 285, 288, 258 A.2d 791, 793 (1969). *See State v. Goff*, 107 R.I. at 339, 267 A.2d at 690; *State v. Reid*, 101 R.I. 363, 366, 223 A.2d 444, 446–47 (1966).

■ We have carefully examined the challenged instruction and find nothing therein which an ordinarily intelligent lay person would have understood as an opinion as to the weight of the evidence or as to the credibility of defendant. The trial justice

merely noted the state's reason in calling Sergeant Robichaud as a witness and the limited purpose for which his testimony could be considered. The instruction was intended to protect defendant, and it achieved this result without error.

In his next assertion of error, defendant urges that the trial justice erred in failing to instruct the jury on defendant's claim of defense of a third person. We disagree.

■ In *State v. Gelinas*, R.I., 417 A.2d 1381, 1386 (1980), this court adopted the rule that "one who comes to the aid of an arrestee must do so at his own peril and should be excused only when the individual would himself be justified in defending himself from the use of excessive force by the arresting officer." In the instant case, the trial justice properly incorporated this rule into his charge to the jury. He was also correct in denying defendant's request for an instruction on his defense of a third person.

■ In his brief, defendant directs our attention to *State v. Caron*, R.I., 423 A.2d 823, 824 n.2 (1980), in which we noted that if a defendant raises the issue of defense of a third person, the state must negate the defense beyond a reasonable doubt, "*provided the defense is supported by sufficient evidence to raise a factual issue.*" (Emphasis added.) The question of whether defendant was entitled to this instruction is settled by reference to a similar case, *State v. Small*, R.I., 410 A.2d 1336, 1337–38 (1980), wherein we held that a defendant who attacks a police officer in an effort to assist a third person in avoiding arrest is not entitled to an instruction on defense of a third person. This is precisely the situation presented in the case before us. In accordance with *Small, supra*, we find no error in the trial justice's refusal to give the unwarranted instruction requested by defendant.

The defendant next complains of the trial justice's instruction wherein he advised the jurors to "eliminate from their consideration" evidence of any injuries sustained by

defendant and his wife as a result of the altercation.[5]

The defendant argues that the evidence in question was relevant to the credibility of the state's witnesses and that its exclusion is reversible error according to *State v. Camerlin*, 116 R.I. 726, 360 A.2d 862 (1976). We disagree.

 *Camerlin* lends little support to defendant's argument. The evidence erroneously excluded in that case was not only relevant to the issue of the credibility of the state's witnesses, it was also crucial to determining whether Camerlin in fact initiated the altercation that resulted in his conviction. The evidence excluded in the instant case was, as the trial justice properly noted, peripheral to the case. As we stated in *State v. Camerlin*, 116 R.I. at 729, 360 A.2d at 865, questions of relevancy of testimony and of photographs are addressed to a trial justice's sound discretion. That discretion was not abused in this case.

The final issue before us concerns the following comments made by the state in its closing argument:

"I would also at this time point out that at the time when I read the names of witnesses that I was going to call I used the words, 'expect to call in this case,' and also there are the names of individuals who I said the names may come up during the prosecution of the State's case. I did not promise that I was going to bring every single witness who I mentioned to testify for the State in this case. And as an aside, no witness is the State's witness. A witness is anyone's witness."

The defendant claims that this statement constituted prosecutorial comment on his failure to present witnesses and that the trial justice's subsequent instruction was inadequate to remove the prejudicial effect.

We agree in principle with defendant's argument. Prosecutorial comment on a defendant's failure to call a witness is certainly improper. *State v. Sepe*, R.I., 410 A.2d 127, 132 (1980). *See State v. Jefferson*, 116 R.I. 124, 136–37, 353 A.2d 190, 197–98 (1976). We do not agree, however, that there was anything in the prosecutor's comment, "A witness is anyone's witness[,]" that would have conveyed to the jury the impression that defendant had an obligation to present certain witnesses. In any event, the trial justice effectively removed any possible impropriety with the following instruction:

"Ladies and gentlemen of the jury, [the prosecutor] has just mentioned that a witness doesn't belong to either side, and can be called by anyone, which is a correct statement. However, I must point out to you that a defendant doesn't have to prove anything, and it is not the responsibility of the defendant to call a particular witness."

For the foregoing reasons, the defendant's appeal is denied and dismissed, the judgment of conviction appealed from is affirmed, and the case is remanded to the Superior Court.

---

5. The defendant, his wife (codefendant Dianne Aptt), and several other witnesses testified to injuries sustained by both defendants during and after their arrests.

The trial justice further instructed the jury that

"[i]t is not a case before you involving police brutality, a case brought by individuals against police officers and members of the department. The fact that Jeffrey Aptt went to the F. B. I. a day or so after the incident and pictures were taken of him, may be of interest in another lawsuit which may or may not be pending, concerning Jeffrey Aptt and

police officers of Pawtucket. It is irrelevant to this case.

\* \* \* \* \* \*

"If there is a case pending concerning other matters, where Dia[n]ne and Jeffrey Aptt may or may not have a case pending for police brutality, that will be before another court and another jury, and it has nothing whatsoever to do with the deliberations in this case. It is important that this jury be aware of the cases which are being tried here and eliminate from their consideration the evidence that does not concern these particular cases."