STATE

v.

Robert ZMAYEFSKI.

No. 99–266–C.A.

Supreme Court of Rhode Island.

Dec. 3, 2003.

See also 672 A.2d 466

Jane M. McSoley, Esq., Providence, for Plaintiff.

Paula Lynch, Esq., for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY and SUTTELL, JJ.

## OPINION

PER CURIAM.

The defendant, Robert Zmayefski (defendant), appeals from his conviction for

the breaking and entering of a dwelling in violation of G.L.1956 § 11–8–2; resisting arrest in violation of G.L.1956 § 12–7–10; and possession of marijuana in violation of G.L.1956 § 21–28–4.01(c)(1)(2)(ii). This case came before the Supreme Court for oral argument on September 24, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time.

On appeal, defendant asserts that he was denied a speedy trial. He also challenges the denial of his motion for a judgment of acquittal and motion for a new trial. We affirm the conviction.

## I

### Facts and Travel

On July 4, 1991, Arthur Trahan (Mr. Trahan) and his wife, Dorothy (collectively referred to as the Trahans), returned home from a cookout to find that the back door of their garage had been kicked in. Once inside, the Trahans found that someone had rummaged through their possessions and that many valuables were missing, including a Hummel figurine collection and jewelry. The Trahans called the police, and Scituate Police Detective Stephen Lang (Det.Lang)[1] responded. Around the same time the Trahans' home was burglarized, defendant's acquaintance, William Moore (Moore), was arrested for driving without a license near the Trahans' home.

The next day, July 5, 1991, Mr. Trahan noticed some broken branches near his property. Upon further investigation, he

---

1. Detective Lang has since been promoted to Sergeant.

found the items that had been stolen from his home hidden in the woods next to his house. The valuables had been wrapped in a rug and pillow case belonging to the Trahans. Two pairs of gloves that Mr. Trahan did not recognize lay on top of the bundle. Mr. Trahan called Det. Lang, who retrieved the valuables but returned the rug and pillow case to the woods filled with rocks. Detective Lang then sent the Trahans to work while he hid in an upstairs bedroom. Around three o'clock that afternoon, defendant and Moore returned to the Trahans' home. Moore got out of the car and knocked on the door. When no one answered, he yelled back to defendant that no one was home. Detective Lang observed defendant jump out of the car and run directly to the cache, with Moore following. Detective Lang then called for backup to make the arrests. After a brief struggle, defendant and Moore were arrested and a search revealed marijuana in defendant's possession.

The defendant originally went before the Superior Court in July 1991, but his case was delayed on several occasions because he appeared without a lawyer. In December 1991, the case was passed for trial. In 1992, however, defendant was incarcerated in Massachusetts for another matter, and his Rhode Island case remained pending. A detainer was lodged with the appropriate Massachusetts officials pursuant to the Interstate Agreement on Detainers Act (IAD), codified at G.L.1956 chapter 13 of title 13. The defendant, however, failed to act upon the detainer.

After being released from prison in Massachusetts in April 1994, defendant returned to Rhode Island and was referred to the public defender's office. The case was set to go to trial in September 1994, but in September defendant was not ready and requested that the trial be continued. Thereafter, and until May 31, 1995, the case was postponed on numerous occasions at the request of defendant and, separately, the state. On May 31, 1995, defendant filed a motion *in limine* to suppress a statement he made at the time of his arrest. The Superior Court granted the motion and this Court affirmed. *State v. Zmayefski*, 672 A.2d 466 (R.I.1996).

The defendant's case was reached for trial once again, in October 1996, but the state was not ready. On January 29, 1998, the case was called for trial yet again, but defendant did not appear. On September 22, 1998, the case finally was ready for trial with all of the parties present and ready. The defendant filed a motion to dismiss for lack of a speedy trial. The trial justice denied the motion, and the trial proceeded.

The state presented Mr. Trahan and Det. Lang to testify about what they observed in the hours following the crime on July 4, 1991, as well as what occurred on July 5, 1991, when defendant and Moore returned to the Trahans' home to collect the hidden valuables. After the state rested its case, defendant moved for a judgment of acquittal, arguing that the state's evidence was entirely circumstantial. The trial justice denied the motion, and defendant called one witness. After defendant rested, the trial justice charged the jury and, on September 24, 1998, the jury found defendant guilty on all three counts.

Before defendant was sentenced, he filed a motion for new trial. The trial justice denied the motion and sentenced defendant to six years at the Adult Correctional Institutions (ACI) for breaking and entering, four years to serve and two years suspended with probation. Additionally, defendant was sentenced to one year at the ACI for possession of marijuana and one year for resisting arrest. These sentences were to run concurrently with each

other, but consecutive to the four-year term.[2]

## II

### Speedy Trial

Both the United States Constitution and the Rhode Island Constitution guarantee "the right to a speedy and public trial" to those accused of a criminal offense. U.S. Const. Amend. VI; R.I. Const. art. 1, sec. 10. This right to a speedy trial "is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Loud Hawk*, 474 U.S. 302, 312, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (quoting *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966)). Because the right to a speedy trial is a constitutional right, we review *de novo* the allegation that the right was violated. *State v. Austin*, 742 A.2d 1187, 1193 (R.I.1999).

In determining whether a defendant's right to a speedy trial has been violated, this Court considers whether the defendant asserted his right to a speedy trial, the length of the delay, who was at fault for the delay, and whether the delay actually was prejudicial. *State v. Corbin*, 805 A.2d 702, 702 (R.I.2001) (mem.) (citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). We address each factor *seriatim*.

The defendant did not assert his right to a speedy trial at any point before his trial actually began. We previously have noted that a "person who faces criminal charges * * * is well advised to assert his or her right to a speedy trial * * * by—loudly knocking on the courthouse door and demanding a speedy trial." *State v. Crocker*, 767 A.2d 88, 94 (R.I.2001). In considering whether defendant asserted his right, "this Court looks for actions sufficiently aggressive to constitute the equivalent of a 'banging on the courthouse doors.'" *State v. Austin*, 731 A.2d 678, 684 (R.I.1999). This Court has held that a two-year delay in asserting one's right to a speedy trial "hardly demonstrates an active pursuit of this right." *Crocker*, 767 A.2d at 94 (quoting *State v. Anthony*, 448 A.2d 744, 750 (R.I.1982)). The defendant's failure to pursue his right in the seven years after he was indicted clearly is not assertive. The failure to bang at the courthouse door weighs heavily against his current claim that his right to a speedy trial has been violated.

We next consider the length of the delay. A delay longer than one year is "'presumptively prejudicial.'" *Crocker*, 767 A.2d at 92. In this case, defendant was arrested on July 5, 1991, and was brought to trial on September 22, 1998, resulting in a seven-year delay. Such a delay is presumed to be prejudicial. Therefore, we will consider who is at fault for the delay and whether defendant actually was prejudiced. For purposes of this discussion, we review the delay in terms of four distinct time periods: July 1991—April 1994; April 1994—May 1995; May 1995—March 1996; and March 1996 September 1998. We are of the opinion that defendant is largely at fault for the delay in bringing his case to trial.

---

**2.** On June 3, 1999, defendant argued a motion for new trial based on newly discovered evidence. The trial justice heard testimony from a former acquaintance of defendant who alleged that he, and not defendant, had committed the breaking and entering on July 4, 1991. Although the trial justice denied the motion, it is not subject to this appeal.

From 1991 until 1994, defendant was incarcerated in Massachusetts. During that time, the state lodged a detainer, pursuant to the IAD, with the Worcester County House of Correction. Although the state never moved for defendant's return pursuant to the IAD, defendant never moved to exercise his rights under the detainer. Thus, the delay during this period is attributable to defendant's voluntary absence from the jurisdiction.

From April 1994 until May 31, 1995, the case was postponed fifteen times, twice because the prosecutor was on trial elsewhere and seven times because defendant was not ready.[3] Because a significant portion of the delay from April 1994 until May 1995 is attributable to defendant, we conclude that he bears primary responsibility for those thirteen months of delay.

On May 31, 1995, the case was brought to trial and defendant filed a motion to suppress his alleged confession. The Superior Court granted that motion and the state unsuccessfully appealed. *Zmayefski*, 672 A.2d at 467. The case was returned to Superior Court in March 1996. Although that ten-month delay is attributable to the state, the Supreme Court has held that an "interlocutory appeal by the Government ordinarily is a valid reason that justifies delay." *Loud Hawk*, 474 U.S. at 315. Because the state's appeal of defendant's motion to suppress was not "unimportant or tangential," *United States v. Herman*, 576 F.2d 1139, 1146 (5th Cir.1978), this delay does not work against the state.

Between March 1996 and September 1998, the state and defendant each requested a continuance when the case was transferred to other attorneys in the public defender's office and attorney general's office. The public defender requested and was granted a six-month continuance. The state, however, requested only two weeks to become familiar with the case, but was given one month. Clearly defendant assumed greater responsibility for the delay than did the state. Furthermore, in October 1997, defendant moved to dismiss the case for lack of probable cause.[4] This motion caused further delay when the court postponed two hearings to allow for further investigation. Additionally, on January 29, 1998, the case was called for trial, but defendant failed to appear.

Having carefully reviewed the record, it is apparent that the delay in bringing defendant's case to trial was caused primarily by defendant himself.

The final inquiry is whether defendant actually was prejudiced by the delay. The defendant alleges that he was prejudiced because, when his trial finally commenced, he was either unable to locate his alibi witnesses or they were unable to remember whether they had seen defendant on the date of the breaking and entering.[5] This Court is not convinced that any prejudice to defendant is sufficient to vacate his conviction. At no time during the seven-year interval did the named alibi witnesses ever come forward with information about defendant's whereabouts. As the United States Supreme Court has noted, "[m]ore important than the absence of serious prejudice, is the fact that [defendant] did not want a speedy trial." *Barker*, 407 U.S. at 534, 92 S.Ct. 2182. If defendant were concerned that his defense was in jeopardy because of the delay in prosecuting his

---

3. The docket sheet does not indicate who requested the other six postponements.

4. The defendant argued that, with his confession suppressed, the state did not have proba-

ble cause to believe that he committed the breaking and entering on July 4, 1991.

5. The defendant did not call any alibi witnesses to testify at his trial.

case, then he should have insisted on his right to a speedy trial at some point during the seven years.

For the reasons set forth *supra*, the trial justice's denial of defendant's motion to dismiss is affirmed.

## III

### Motion for Acquittal

■ The defendant also challenges the trial justice's refusal to grant his motion for acquittal. The record reveals, however, that defendant's only motion for acquittal was filed after the state rested, but before defendant presented his case. This Court has held that "[t]he denial of a motion for acquittal, made at the conclusion of the prosecution's case, is reviewable only if the defense rests after making the motion." *State v. Henshaw*, 557 A.2d 1204, 1207 (R.I.1989). Since defendant presented his case after the trial justice denied his motion to acquit, that ruling is not reviewable on appeal.

## IV

### Motion for New Trial

■ The defendant also argues the trial justice erred in denying his motion for new trial. In ruling on a motion for new trial, the trial justice acts as a "super-juror," reviewing evidence and assessing credibility. *Skene v. Beland*, 824 A.2d 489, 493 (R.I.2003). A trial justice should not disturb the jury's verdict if reasonable minds could differ over the outcome. *State v. Dyer*, 813 A.2d 71, 76 (R.I.2003). This Court will not disturb a trial justice's ruling on a motion for new trial unless the trial justice "has overlooked or misconceived material evidence or was otherwise clearly wrong." *State v. Kaba*, 798 A.2d 383, 390 (R.I.2002).

The defendant asserts that his breaking and entering conviction hinged on the testimony of one witness, Det. Lang, who testified that he saw defendant "leading the way" to the "goods" on July 5, 1991. According to defendant, that statement should not be considered because it was not in the original police report and, therefore, is not reliable. The defendant argues that without this evidence, the state failed to link him to the breaking and entering that occurred on July 4, 1991. The absence of that statement, however, was the subject of cross-examination and the jury was able to consider it and weigh it accordingly.

Furthermore, the state presented additional evidence from which reasonable jurors could, and did, infer that defendant committed the breaking and entering. We often have held that "circumstantial evidence alone may be sufficient to prove guilt beyond a reasonable doubt." *State v. Smith*, 662 A.2d 1171, 1177 (R.I.1995). Two pairs of gloves were found lying on top of the valuables hidden in the woods, indicating that two people had broken into the Trahans' home. On July 5, 1991, two people, defendant and Moore, returned to the home to collect the items that were stashed the day before. The jury could have properly inferred that defendant was stranded at the Trahans' home when Moore was arrested nearby, thus leaving defendant unable, at that time, to carry the valuables away. The fact that defendant led the way to the hiding place in the woods on July 5, 1991, strengthens the state's argument significantly because only the person who hid the stolen items could have "led the way" directly to the goods the following day. From these facts the jury inferred, and the trial justice concurred, that defendant had broken into the Trahans' home.

We are satisfied the trial justice properly relied on this circumstantial evidence to deny the motion for new trial. After carefully reviewing the record, it is apparent that the trial justice did not overlook or misconceive material evidence and properly denied the defendant's motion.

## Conclusion

For the reasons stated herein, we affirm the judgment of conviction. The papers in this case shall be remanded to the Superior Court.