STATE

v.

Robert KITTELL.

No. 2003–137–C.A.

Supreme Court of Rhode Island.

April 22, 2004.

Jane M. McSoley, Esq., Providence, for Plaintiff.

Catherine A. Gibran, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

**OPINION**

PER CURIAM.

"Ya got trouble, folks, right here in River City; with a capital 'T' and that rhymes with 'P' and that stands for 'pool.'" [1] After a night of playing pool, drinking heavily and causing trouble, the defendant, Robert Kittell (Kittell or defendant), stabbed Michael Payne (Payne) without provocation. Not fatally injured, Payne fought back with a vengeance, injuring the defendant. After a jury trial, the defendant was convicted of one count of felony assault, pursuant to G.L.1956 § 11–5–2. The defendant now appeals.

This case came before the Supreme Court for oral argument on March 8, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time. For the reasons indicated herein, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

It was Super Bowl Sunday, February 3, 2002. The defendant and his then-girlfriend, Patricia Thomas (Thomas or girlfriend), went to Grav's Pub (pub) in the Town of West Warwick to drink beer and play pool. The couple happened upon Payne, Payne's two cousins, Howard (Howard) and Neil Brown (Neil), and Neil's girlfriend, Chantal Bouchard (Bouchard), among others gathered around the pub's only pool table. As per the establishment's unwritten policy, defendant add-

---

1. Meredith Wilson, *Ya Got Trouble,* The Music Man (1957).

ed his name to the list on the pool table indicating that he wished to get in line to play the winner.

Eventually, defendant played against a regular at the pub known only as Dave. After defendant lost the game, a verbal exchange occurred in which Dave directed racial slurs toward defendant's girlfriend. Thereafter, Dave left the pool area and defendant returned to where his girlfriend waited nearby. What happened next is contested. Howard testified that he saw defendant pull out his knife and show Thomas what he would do to Dave if he "[kept] it up." The defendant testified that he did not remove his knife from the sheath attached to his belt while inside the pub.

Shortly after this incident, defendant played pool with Payne. After losing that game, defendant accused Payne of cheating. According to Payne's testimony, the men had a short argument, but it did not become physical. Apparently defendant accused his fellow patrons of unfair play again when he went to the pub's manager to complain that he had been skipped in the pool rotation. Eventually, defendant and his girlfriend were asked to leave the pub when they tried to order more drinks. The bartender testified that Thomas seemed agitated, but defendant left the bar peaceably. The pair then drove to another bar, where they continued to enjoy alcoholic beverages.

Meanwhile, back at the pub, last call was made around 12:30 a.m., and Payne, who had consumed roughly fifteen beers but was not visibly intoxicated, and his friends exited into the parking lot. While Neil and Bouchard drove a friend to a nearby Cumberland Farms store, Payne, Howard and Dave lit a marijuana cigarette in the parking lot and waited for Neil and Bouchard to return. Around this time, the inebriated defendant drove Thomas back to the pub.

According to Payne's testimony, while Thomas walked up to the pub, defendant approached the trio and asked whether he could smoke marijuana with them. Payne testified that after he turned defendant down, defendant walked over to the group and stabbed Payne in the stomach. Payne further testified that he was not aware that defendant had stabbed him until he saw the blood. Payne said that he jumped on defendant and began pummeling him in self-defense.

The defendant remembers the sequence of events a bit differently. He testified that while Thomas went up to the pub he stayed back by the fence surrounding the parking lot. According to defendant, Dave approached him and punched him in the face for no reason and then the three men ganged up and began savagely beating him. The defendant said that he tried to protect himself by swinging his knife, but was unaware whom he stabbed until later. The police officer who responded first to the scene testified that, when he arrived, Payne was talking and walking around while defendant was lying on the ground, badly beaten and unresponsive.

At the hospital, Payne was treated for stab wounds to his stomach and forehead. In addition, Payne suffered abrasions on his hands caused by hitting defendant. The defendant also was badly beaten and claims he has suffered memory loss and headaches as a result of the incident.

After a four-day trial, a jury found defendant guilty of one count of felony assault. He was sentenced to twelve years, three to serve, at the Adult Correctional Institutions. On appeal, defendant argues that the trial justice gave improper jury instructions and erroneously denied his motion for new trial. We affirm the conviction.

## II

### Jury Instructions

The defendant contends that the jury instructions were improper for two reasons. First, he argues that the trial justice improperly shifted the burden to defendant to prove that he was "entitled to invoke the doctrine of self-defense." Second, defendant asserts that the trial justice impermissibly singled out his testimony for special scrutiny.

 "[A] trial justice need only 'adequately cover [] the law'" when instructing a jury. *State v. Hurteau*, 810 A.2d 222, 224 (R.I.2002) (quoting *State v. Krushnowski*, 773 A.2d 243, 246 (R.I.2001)). "On review, we examine the instructions in their entirety to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them." *Id.* at 225 (quoting *State v. Gomes*, 604 A.2d 1249, 1256 (R.I.1992)). It is well settled that this Court will not examine a single sentence apart from the rest of the instructions, but rather "the challenged portions must be examined in the context in which they were rendered." *State v. Hanes*, 783 A.2d 920, 925 (R.I.2001) (quoting *State v. Marini*, 638 A.2d· 507, 517 (R.I.1994)).

## A

### Self–Defense

 The defendant takes issue with the following phrase from the trial justice's instruction to the jury: "you determine from the facts that the defendant was entitled to invoke the doctrine of self-defense."[2] Relying on *State v. Baker*, 417 A.2d 906, 910 (R.I.1980), defendant argues that this phrase implies to the jury "that before they can acquit they must 'find' the existence of a proposition that the defendant has claimed˙* * *." The defendant contends that a reasonable jury could imply from those instructions that defendant bore the initial burden of providing proof of self-defense. A trial justice is obligated "to preclude the possibility that the jury might misconstrue the law and place upon defendant the burden of proving the defense." *Id.* at 910–11. When the contested jury instruction is read "in the context of the charge as a whole," *id.* at 910, however, there is no question that the burden of proving self-defense remained with the state.

The trial justice made it clear in the sentence immediately preceding the disputed phrase that defendant had no burden to prove that he acted in self-defense. He specifically instructed that "[t]he defendant is not required to prove that he acted· in self-defense." Moreover, the end

---

2. We are required to consider the disputed phrase in context. The following is the trial justice's instructions directly before and following the phrase at issue:

"You have heard conflicting testimony as to whether or not the defendant was the aggressor in this incident. As the finders of fact, you must determine from the evidence you have before you whether in fact the defendant was the aggressor. I am instructing you that the law of self-defense holds that a person who instigates the combative confrontation cannot invoke the doctrine of self-defense. The defendant is not required to prove that he acted in self-

defense. Rather, where there is evidence of self-defense, and *you determine from the facts that the defendant was entitled to invoke the doctrine of self-defense*, the state must prove to each of you beyond a reasonable doubt that the defendant did not act in self-defense. If you find from all the evidence and the reasonable inferences to be drawn from the evidence that the state has proven beyond a reasonable doubt each of the elements of assault with a dangerous weapon, and that the defendant did not act in self-defense, then you must return a verdict of guilty on this charge." (Emphasis supplied by defendant.)

of the very sentence defendant alleges improperly shifted the burden to him provides: "the state must prove to each of you beyond a reasonable doubt that the defendant did not act in self-defense." No intelligent lay person would interpret the disputed phrase, when taken in context, as requiring defendant to prove any element of self-defense, including his right to invoke the defense.

A disputed sentence will not be read alone, but rather in the context of which it was rendered. *Hanes,* 783 A.2d at 925. The trial justice made it abundantly clear throughout the trial that "the burden of proof does not rest with [the defendant], it always rests with the state." Before the trial even began, the trial justice told the jury that "[t]he burden of proving the defendant guilty beyond a reasonable doubt rests on the state, and that burden of proof never shifts during the course of a trial." Once the trial reached the jury instruction stage, the trial justice reminded the jury many times that the burden of proof always rests with the state. He told the jury if it found "the state has proven beyond a reasonable doubt each of the elements of assault with a dangerous weapon, and that the defendant did not act in self-defense, then you must return a verdict of guilty on this charge," or, in the alternative, that if they found that "the state failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, then you must return a verdict of not guilty as to this charge." In case any question remained about who had the burden of proof, the trial justice emphasized that "[t]he burden of proving the defendant guilty beyond a reasonable doubt * * * never shifts during the course of a trial," and that a defendant "is under no obligation to prove anything or present any evidence." There is no doubt that the trial justice adequately explained to the jury the correct law of self-defense so that no ordinarily intelligent lay person would be confused. Therefore, defendant's argument fails.

## B
### Witness Credibility

The defendant also argues that the trial justice committed reversible error by singling out his testimony during the jury instructions. A jury instruction is erroneous when a trial justice singles out a particular witness's testimony for careful scrutiny, thus giving the jury the impression that he questions that witness's credibility. *State v. Hull,* 106 R.I. 285, 288, 258 A.2d 791, 792–93 (1969). In determining whether a trial justice has overstepped his bounds, the standard is whether a jury made up of ordinarily intelligent lay persons would have understood the charge, when taken in its entirety, as expressing the judge's opinion of the witness's credibility. *Id.* at 288, 258 A.2d at 793. When a trial justice comments on the evidence during his instructions to the jury, he must include statements that the jurors alone are the triers of fact and that they alone determine the credibility of the witnesses or the weight of the evidence. *Frias v. Jurczyk,* 633 A.2d 679, 682 (R.I.1993).

The defendant disputes the trial justice's statement that

"You should not disbelieve or give greater or lesser weight to such testimony merely because of the defendant, or merely because the witness is the defendant in this matter. However, just like any other witness, you may consider whether the defendant has an interest in the outcome of this case."

The trial justice's next sentence was: "As always, you should evaluate the defendant's testimony just like any other witness's testimony, utilizing the factors which I'm about to give you as to the

credibility of witnesses, and give it such weight as in your judgment it is fairly entitled to receive." In addition, the trial justice told the jury "[y]ou are the sole judges of the facts. You alone decide what weight to give the evidence presented to you during this trial. You decide the value of the evidence and the believability or credibility of the witnesses." He reiterated this point later in his charge, telling the jury that "[y]ou shall be the sole judges of the credibility or believability of each of the witnesses. In other words, you alone are to determine whether or not to believe any witness and the extent to which any witness should be believed."

Although the trial justice did make a specific reference to defendant's testimony, he did so in the general context of how the jury is expected to consider all testimony. In addition, the trial justice was very careful to inform the jury that they alone were responsible for determining the weight of evidence and credibility of witnesses. Therefore, we hold that when the charge is considered in its entirety, an ordinarily intelligent lay person would not have understood the trial justice's charge as his opinion on defendant's credibility. Therefore, the trial justice's instructions were proper.

## III

### New Trial

■■■ Finally, defendant argues that the trial justice erred in denying his motion for new trial. "In ruling on a motion for new trial, the trial justice acts as a 'superjuror,' reviewing evidence and assessing credibility." *State v. Zmayefski*, 836 A.2d 191, 196 (R.I.2003). If a trial justice determines that reasonable minds could disagree over the outcome then he may not disturb the jury's verdict. *Id.* We "will not disturb a trial justice's ruling on a motion for new trial unless the trial justice

'has overlooked or misconceived material evidence or was otherwise clearly wrong.' " *Id.* (quoting *State v. Kaba*, 798 A.2d 383, 390 (R.I.2002)).

The defendant asserts that the trial justice erred in denying his motion for new trial because the jury's decision was against the clear preponderance of evidence. Specifically, defendant argues that it is improbable to believe that he, a man in his forties weighing less than two hundred pounds, would approach a group of three larger, younger men and stab one of them. The defendant also points out that he was in much worse shape than Payne when the police arrived as a result of the severe beating he took.

At the hearing on the defendant's motion for new trial, the trial justice came to the exact same conclusion the jury had reached. The trial justice stated:

"[T]he court therefore finds that [defendant] was the aggressor, and in fact he stabbed Mr. Payne with the knife without provocation, and it was not done in self-defense, and therefore feels that the jury certainly was justified, and it was in accordance with the fair preponderance of the evidence adduced in finding [defendant] guilty * * *."

In reaching this decision, the trial justice concluded that the defendant's testimony was not credible. As the trial justice indicated, it is unlikely that Payne and the others attacked the defendant and knocked him to the ground where they continued to pummel him and that, while on the ground, the defendant was somehow able to unsheathe his knife, wave it around, and stab Payne in the stomach and eye. The defendant has presented no evidence on appeal that was overlooked or misconceived at trial. The trial justice and jury reached the same conclusion based on the testimony and evidence before them, and there is

no reason for this Court to determine that the outcome was wrong. Therefore, the motion justice's denial of the defendant's motion for new trial is affirmed.

### Conclusion

Because the trial justice committed no error in his instructions to the jury and the defendant has failed to prove that the trial justice's denial of his motion for new trial was clearly wrong, we affirm the defendant's conviction. For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.