225 A.2d 512.

STATE *vs.* VIRGINIA MANGUM.

JANUARY 11, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This is an indictment charging the defendant with unlawfully receiving or offering or agreeing to receive a female into a house for the purpose of prostitution in violation of G. L. 1956, §11-34-5. The case was tried to a superior court justice and jury who returned a verdict of guilty as charged. It is before us on the defendant's bill of exceptions which contains several exceptions both argued and briefed. However, because of the view we take of her exception to the denial of her motion for a directed verdict, only this exception will be considered.

The evidence adduced by the state and the reasonable inferences to be drawn therefrom establish that from approximately October 14 through November 5, 1963, members of the Providence police crime squad had under surveillance a house located on Sprague street suspecting that it was being used for immoral purposes. During that period a member of said squad, acting on information, contacted defendant by telephone. Resorting to identification by code given to him by his informer, he inquired of defendant whether she could provide him with a prostitute. Apparently relying on the detective's use of the code, defendant answered that she could and suggested that he telephone her at a later date when a girl would be available. He telephoned twice on November 5, 1963 and made arrangements with defendant to meet with a girl named Marie at 7:30 that evening. The defendant had arranged for the girl and instructed the detective to go to a certain house and identify himself as defendant's friend. The house to which he was directed was that which was under surveillance as heretofore related.

Before making an appearance at the house in question the detective was given two marked $10 bills by his superior, defendant having stated that the price would be $20. This money, the evidence discloses, was to be divided $10 to Marie and $5 each to defendant and the woman

whose apartment was to be used by the detective and the girl Marie.

The detective went to the house as instructed, identified himself to the tenant as defendant's friend and was admitted to await the arrival of Marie. When almost an hour had passed and she did not arrive the tenant in the presence of the detective called defendant, explained the circumstances and suggested that she could get another girl if this was satisfactory to defendant. This was agreed upon and the tenant thereupon called a girl named Polly who arrived shortly thereafter. She accepted the marked bills, turned them over to the tenant and then went into the bedroom where she removed her clothing. On the pretext that he wished to use the bathroom the detective, who remained dressed, went to the bathroom and by use of an electronic device alerted the police officers who were waiting outside for a signal that an arrest was about to be made. Simultaneously with the detective making known his identity and placing Polly under arrest, the other officers entered the premises to assist therein. Testimony establishing the foregoing events was given by the sergeant in charge of the detail, the detective who negotiated with defendant, and the tenant of the premises in question. The girl known as Polly also testified and although admitting that she knew defendant denied that she had talked with her on the night in question. It should be added that the detail sergeant also testified that on one occasion, namely October 17, 1963, he had observed defendant enter the house on Sprague street in the early evening and leave a half hour later in the company of a woman not identified. In the same vein the tenant testified that defendant had made similar arrangements on one previous occasion during October 1963.

Although not basic to a consideration of the questions raised by defendant's bill of exceptions, we might also note that the tenant as well as defendant was indicted for the

offense charged. The former, however, pleaded nolo contendere and the charge as to her had been disposed of prior to the time defendant went to trial.

The exact offense with which they were charged is contained in §11-34-5 and is italicized within said section as follows:

*"It shall be unlawful for any person to* secure, direct or transport, or offer to secure, direct or transport another for the purpose of prostitution, or for any other lewd or indecent act; or to loiter in or near any thoroughfare or public or private place for the purpose of inducing, enticing, soliciting, or procuring another to commit lewdness, fornication, unlawful sexual intercourse or any other indecent act; or to commit or in any manner induce, entice, or solicit, or procure a person in any thoroughfare, or public or private place or conveyance to commit any such act; or to *receive or offer or agree to receive any person into any place, structure, house, building, room, or conveyance for the purpose of committing any such acts,* or knowingly permit any person to remain therein for any such purposes, or to, in any way, aid or abet or participate in any of the acts or things enumerated herein." (italics ours)

The "any such acts" to which the indictment related and of which proof was offered was "prostitution" as the same appears in the section.

After the state had rested, defendant followed suit and moved for a directed verdict. The trial justice, viewing the evidence in the light most favorable to the state and giving it the benefit of every reasonable inference to be drawn therefrom, concluded that the jury would be warranted in finding defendant guilty as charged and submitted the case to them.

The defendant does not question the correctness of the rule relied upon by the trial justice, held to be proper by this court in *State* v. *Wright,* 70 R. I. 39, *State* v. *Hillman,*

84 R. I. 396, and *State* v. *Reardon,* 101 R. I. 18, 219 A.2d 767.

She contends rather that the trial justice misconceived the law when, in weighing the evidence and drawing every reasonable inference, he concluded that the jury would be warranted in finding that defendant had the necessary element of control of the premises on Sprague street required to support her conviction on the charge that she received, or offered, or agreed to receive a girl in said premises for the purpose of prostitution. There is no evidence, she argues, of the necessary control nor is such evidence open to a reasonable inference thereof.

In support of this contention she cites *People* v. *Webb,* 25 N.Y.S. 2d 554. An analysis of that case persuades us that there is merit in defendant's contention. There the defendant who had been charged with receiving for purposes of prostitution, unlawful sexual intercourse, or other lewd and wanton acts contended that there was no proof she was the person in control of the house in question and that in fact the apartment belonged to Mr. and Mrs. Upton. The New York court acknowledging that such control was a necessary element to support the charge painstakingly pointed out circumstances which tended to prove the defendant's control.

The court held at page 558: "The word 'receive' as used in Section 887 of the Code of Criminal Procedure does not, of course, mean the mere permitting of persons to enter the premises or the mere answering of the door bell as a maid would do. There must be in addition to this element the element of control over the establishment and the element of control over the persons entering or using the same. See *People* v. *Richardson,* 222 N. Y. 103, 118 N. E. 514."

Continuing, the court rejected defendant Webb's alleged lack of control, pointing out that she admitted persons to the apartment, had keys to the apartment and closets with-

in it, kept and changed her clothing there, conferred with the building superintendent when the apartment was to be painted and was assumed by the elevator operator to be the tenant. On this set of facts the court was of the opinion that the evidence warranted the inference that the defendant was in control of the apartment and that the Uptons were a mere front to screen her illegal operations.

There appears to be a dearth of authorities on the question of the extent or nature of the control necessary to sustain a conviction for the offense with which the instant defendant was indicted. In any event the state called no authorities in point to our attention, nor was our independent research more fruitful. After carefully considering the *Webb* case, therefore, we conclude that the offense charged cannot be established by a showing of mere permission to use the apartment of another from occasion to occasion with no right of access absent such permission.

In the instant case the evidence establishes that the tenant and not defendant exercised the necessary control over the premises and the jury would not have been warranted in drawing an inference that the essential element of control rested with defendant. The trial justice appears to have assumed, and the state so argues, that the tenant was the agent of defendant and control of the premises can be thus shown in support of the indictment.

That the legislature intended otherwise is readily apparent from the last proviso of the statute, which provides: "* * * or to, in any way, aid or abet or participate in any of the acts or things enumerated herein."

We think it clear then that the specific offense for which the defendant was being tried could not be established on any view of the evidence adduced by the prosecution and the trial justice erred in denying the motion for a directed verdict.

The defendant's exception to the denial of her motion

for a directed verdict is sustained and the case is remitted to the superior court for further proceedings.

*J. Joseph Nugent*, Attorney General, *Corinne P. Grande*, Special Assistant Attorney General, for State.

*Anthony Grilli, Anthony E. Grilli*, for defendant.