STATE

v.

**Edward James McKEE, Jr.**

No. 80–537–C.A.

Supreme Court of Rhode Island.

March 12, 1982.

Dennis J. Roberts, II, Atty. Gen., John E. Migliaccio, Asst. Atty. Gen., for plaintiff.

John D. Lynch, Warwick, for defendant.

## OPINION

MURRAY, Justice.

This is a criminal information charging the defendant Edward James McKee, Jr. (defendant), with one count of receiving for prostitution[1] and one count of pandering for prostitution.[2] A Superior Court jury returned a verdict of guilty on both counts, and the defendant is now before us on appeal from the judgment of conviction entered on these charges.

The defendant was charged as a result of a police investigation of Bachelors Quarters, a Providence massage parlor operated by defendant. Detective Judith Mirando, the undercover policewoman who conducted the investigation was the state's principal witness. In her testimony, which was largely disputed by defendant, Detective Mirando described the events that resulted in defendant's arrest and subsequent conviction.

On February 8, 1977, Detective Mirando, equipped with a concealed listening device, went to Bachelors Quarters and applied for a job as a masseuse. She was interviewed by defendant who, after questioning her about her background and experience, explained the duties and pay of a masseuse working at Bachelors Quarters.

Only a very small percentage of the fees charged for the massage would be received by the masseuse. A week's pay would be well under $100 and could even be as little as $15. However, explained defendant, it was possible to earn as much as $500 to

---

1. In violation of G.L.1956 (1981 Reenactment) § 11–34–5.

2. In violation of G.L.1956 (1981 Reenactment) § 11–34–1.

$1,000 a week more than this by doing "extra work." This extra work was described as including "hand jobs" and "head jobs" (i.e., masturbation and fellatio). However, "balling" (sexual intercourse) was explicitly prohibited. The defendant then told Detective Mirando that he was leaving on a trip, but that if she came back on March 1 her chances of being hired were very good.

Detective Mirando did, in fact, return to Bachelors Quarters on March 1 (again wired with a listening device[3]), and once again the job and pay arrangements were discussed. The defendant told Detective Mirando that she was hired and asked her to try on a costume. Not wishing to risk discovery of her listening device, Detective Mirando arranged to try on the costume the following day.

On March 2, Detective Mirando returned to Bachelors Quarters, tried on a costume for defendant, and received his permission to take the garment home for alterations. Detective Mirando then left Bachelors Quarters and took the costume to the police station, where she tagged it and placed it in the property room.

At trial, defendant called several witnesses whose testimony directly contradicted Detective Mirando's account of what happened at Bachelors Quarters. The defense asserted that no mention was made of any so-called "extra work," that Detective Mirando took the costume without permission, and that defendant was not even on the premises on one of the dates in question.

The first issue raised by defendant concerns the denial of his pretrial motion to suppress the costume taken by Detective Mirando. The defendant asserts that the garment was taken without his consent and that this act amounted to unlawful search and seizure, prohibited by the Fourth Amendment to the United States Constitution and by art. I, sec. 6 of the Rhode Island Constitution.

In determining whether or not there has been an unlawful search and seizure, we must address the threshold question of whether there has been a violation of a constitutionally justifiable expectation of privacy. See Rawlings v. Kentucky, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633, 641 (1980); Rakas v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387, 401 (1978); Katz v. United States, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576, 583 (1967). A review of the pertinent United States Supreme Court opinions leads us to conclude that there has been no Fourth Amendment violation in the case before us.

The defendant's arguments notwithstanding, police undercover investigations do not necessarily run counter to the Fourth Amendment. Lewis v. United States, 385 U.S. 206, 210, 87 S.Ct. 424, 427, 17 L.Ed.2d 312, 315–16 (1966). In Hoffa v. United States, 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374, 382 (1966), the Supreme Court held that the Fourth Amendment does not protect a defendant's communication with a supposed accomplice who is actually a government agent. Nor is a warrant required when an undercover agent enters a defendant's home and purchases narcotics from him. Lewis v. United States, 385 U.S. at 210, 87 S.Ct. at 427, 17 L.Ed.2d at 315–16.

The police investigation in this case was conducted in an acceptable manner. Although Detective Mirando concealed her identity from defendant, she did not acquire the garment sought to be suppressed as a result of a constitutionally impermissible general search of the premises. See Lewis v. United States, 385 U.S. at 211, 87 S.Ct. at 427, 17 L.Ed.2d at 316 (citing Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921)). Furthermore, the evidence that defendant seeks to suppress was found by the trial justice, in his ruling on defendant's motion, to have been voluntarily given to Detective Mirando. In State v. Johnson, R.I., 414 A.2d 477, 479 (1980), we

---

**3.** Detective Mirando testified that neither of the tapes recorded on February 8 and March 1 was intelligible.

stated that "what a person knowingly exposes to the public is not a subject of the Fourth Amendment protection." There was no violation of a constitutionally justifiable expectation of privacy in this case; and we agree with the conclusion of the trial justice that the costume was lawfully obtained by Detective Mirando.

■ The defendant next argues that the trial justice assisted the state in its prosecution and thereby denied defendant a fair and impartial trial. After careful examination of the trial transcript, we conclude that defendant's claim is wholly without merit. The trial justice's participation in the course of defendant's trial was aimed solely at expediting the proceedings and posed no threat, real or apparent, to his impartiality. *See State v. Mercier*, R.I., 415 A.2d 465, 468–69 (1980).

The defendant's next claim of error concerns the denial of his motion for a judgment of acquittal. He contends that the state failed to prove, beyond a reasonable doubt, every element of the crimes charged. Specifically, defendant contends that the state failed to show that he had the control over the premises necessary to support a charge of receiving for prostitution. *See State v. Mangum*, 101 R.I. 518, 522, 225 A.2d 512, 513–14 (1967); G.L.1956 (1981 Reenactment) §§ 11–34–1, 11–34–5. The defendant further argues that the facts adduced at trial indicated no offense coming within the definition of "prostitution."

■■ In ruling on a motion for a judgment of acquittal, the trial justice must view the evidence in the light most favorable to the prosecution, drawing every reasonable inference that is consistent with guilt. *State v. Gazerro*, R.I., 420 A.2d 816, 827 (1980); *State v. McGranahan*, R.I., 415 A.2d 1298, 1301 (1980); *State v. Gianoulos*, R.I., 404 A.2d 81, 82 (1979). Furthermore, the trial justice is not to consider the weight or the credibility of the evidence when ruling on a motion for a judgment of acquittal. *State v. McGranahan*, R.I., 415

A.2d at 1301; *State v. Sepe*, R.I., 410 A.2d 127, 132 (1980); *State v. Murphy*, 113 R.I. 565, 569, 323 A.2d 561, 563 (1974).

■■ In reviewing the evidence for defendant's motion, the trial justice found Detective Mirando's testimony to be ample and credible proof of defendant's authority over the hiring of personnel and over the general management of Bachelors Quarters. He also found that the sexual acts that defendant described to Detective Mirando did in fact constitute "prostitution." This finding is well supported by logic as well as by law. The defendant's definition of "prostitution" would exclude all sexual acts but that associated with reproduction.[4] This is an absurd construction of the applicable statutes which contain no such limited definition of the offense of prostitution. In fact, § 11–34–1 explicitly proscribes "encourag[ing] a female to become a prostitute, *or enter upon or lead a wanton or dissolute life * * *.*" (Emphasis added.)

The trial justice's ruling on defendant's motion for a judgment of acquittal was in accordance with the applicable standard, and we find no error in his denial of that motion.

■ The defendant next challenges the following portion of the trial justice's instruction on defendant's defense of alibi: "Alibi defenses deserve your scrutiny, but alibi defenses often are concocted and should be examined in the light of all of the circumstances prevailing before you." The defendant urges that this remark conveyed the court's prejudice to the jury and was an improper comment on the weight of the evidence. We do not agree.

■ It is unquestioned that a trial justice has a duty to ensure that the jury is not influenced in its factfinding by what it believes to be the opinion of the court. *State v. DeMasi*, R.I., 413 A.2d 99, 100 (1980); *State v. Holland*, R.I., 405 A.2d 1211, 1216 (1979); *State v. Hull*, 106 R.I. 285, 288, 258

---

4. The defendant's reliance on Black's Law Dictionary, fourth edition, is also misplaced, for, as the state notes in its brief, the fifth edition of that work includes "any unlawful sexual act for hire" in its definition of "prostitution." Black's Law Dictionary 1100 (5th ed. 1979).

A.2d 791, 792–93 (1969); *State v. Pella*, 101 R.I. 62, 70, 220 A.2d 226, 231 (1966). This does not mean, however, that every critical comment by a trial justice creates prejudice in the minds of the jurors. *State v. Mancino*, 115 R.I. 54, 57, 340 A.2d 128, 131 (1975).

▮ In reviewing an instruction, the challenged portion must be considered in the context of the charge as a whole. *State v. Baker*, R.I., 417 A.2d 906, 910 (1980); *Infantolino v. State*, R.I., 414 A.2d 793, 796–97 (1980); *State v. Howard*, 114 R.I. 731, 740–41, 339 A.2d 259, 264 (1975). The trial justice in the case before us commented only on the nature of the defense of alibi in general. He did not single out or discredit any particular witness. Moreover, after making the comment to which defendant takes objection, the trial justice further advised the jurors:

"Do not believe the complaining witness or the police officer in this case if you do not believe that she is worthy of belief. Do not, however, reject her testimony solely because she is a police officer; weigh it in the light of your common experiences. You do not judge these things in a vacuum."

This instruction, and the one challenged by defendant, clearly conveyed to the jurors that they alone were to judge the facts and to determine the weight of the evidence and the credibility of the witnesses. *See State v. Holland*, R.I., 405 A.2d at 1216.

In his final issue, defendant argues that in ruling on his motion for a new trial, the trial justice failed to exercise his independent judgment on the weight and credibility of material evidence. A reading of the transcript of the hearing on that motion, however, clearly shows that defendant's claim of error is completely without merit.

In reviewing the evidence against defendant—principally Detective Mirando's testimony—the trial justice explicitly recognized his duty to evaluate independently the weight and credibility of the testimony. The fact that the trial justice accepted Detective Mirando's account of the events of the three days in question does not mean, as defendant urges, that the trial justice necessarily substituted the jury's judgment for his own. The transcript clearly shows that the trial justice made his own determination:

"The Court found, in reviewing her testimony, that she was not impeached in any area of her testimony relating to the subject matter of the charges against this defendant.

\* \* \* \* \* \*

"I find that the undercover police officer was credible. I believe her story. I did not believe the testimony of the alibi witnesses. I find that the testimony before the jury was not only credible, but their verdict is supported by what the Court considers the great weight of the credible testimony."

▮ The trial justice's ruling on the defendant's motion for a new trial was consistent with this court's holdings requiring him to judge independently the weight and credibility of the evidence and to determine whether the defendant's guilt had been proven beyond a reasonable doubt. *State v. Gelinas*, R.I., 417 A.2d 1381, 1388 (1980); *State v. McGranahan*, R.I., 415 A.2d 1298, 1302 (1980); *State v. Barnes*, R.I., 409 A.2d 988, 992 (1979); *State v. Edwards*, R.I., 405 A.2d 1161, 1165 (1979).

The defendant's appeal is denied and dismissed. The judgment of conviction appealed from is affirmed, and the case is remanded to the Superior Court.