STATE

v.

Bryan DESMARAIS.

No. 83–472–C.A.

Supreme Court of Rhode Island.

Aug. 17, 1984.

Dennis J. Roberts II, Atty. Gen., Margaret R. Levy, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Chief Appellate Division, Paula Rosin, Asst. Public Defenders, for defendant.

## OPINION

WEISBERGER, Justice.

This is an appeal by the defendant from judgments of conviction entered in the Superior Court after a jury trial of robbery, breaking and entering in the nighttime with intent to commit larceny, and driving an automobile without the consent of the owner. We reverse and remand for a new trial. The facts upon which the convictions were based are as follows.

On June 22, 1981 at approximately 2:30 a.m., two men in stocking masks broke into the Quincy Dye Works, a business located in Woonsocket, Rhode Island. The night watchman on duty at the time, while watching television after making his 2 a.m. rounds of the plant, was confronted by a man wearing a stocking mask over his head and carrying a gun. The man ordered him to lie down on the floor. The watchman hastened to comply with the order. At that time a second man, assisted by the first intruder, tied the watchman's hands behind his back and placed him in an elevator. The two intruders proceeded to break into some vending machines, thereby triggering an alarm. The two men fled, only to return within a moment to take the watchman's wallet and keys. Both men again departed. One of the men returned a further time to question the watchman about which key fit his truck parked outside the plant. Thereafter they drove the truck away from the scene. Within a short time the watchman managed to free himself and call the police. As the watchman testified at trial, he only saw the robbers for a short time and was unable to identify either of the two men by physical appearance or voice.

At trial, two of defendant's alleged accomplices, Barry Mansfield (Mansfield) and Paul Bernier (Bernier) testified that defendant planned and executed the Quincy Dye Works robbery with Bernier. Mansfield testified that he and a friend drove defendant and Bernier to Quincy Dye Works. It was admitted at trial that Mansfield would be given probation in exchange for testifying for the state. However, no charges in connection with this incident were ever formally brought against Mansfield. The defendant's accomplice, Bernier, who had carried the gun during the break, testified against defendant and was promised a lighter sentence for so doing.

The defendant testified, to the contrary, that he was elsewhere during the time period in which the robbery occurred. This alibi defense was corroborated by two other witnesses, defendant's friend Larry Charette and his friend's father, Celestin Charette. This testimony sought to establish that defendant was at the Charette home from 11 p.m. to approximately 3 or 4 a.m. on the night of the crime, playing checkers with Larry until Celestin awoke and asked him to leave. After the close of all the evidence, the case was submitted to the jury, and a verdict of guilty was returned on all three counts. The defendant's motion for a new trial was denied.

The defendant raises two issues in support of his appeal. The first issue to be addressed concerns the propriety of the trial justice's instruction in respect to the alibi defense. It is defendant's contention that the trial justice committed reversible error in his charge to the jury regarding

the consideration to be given to alibi evidence. The trial justice stated:

"Now, in this case that is before you, the defense of the alibi: Alibi evidence obviously should be given fair consideration by the jury. Since alibis can be fabricated, * * * they are subject to searching scrutiny on the part of the jury. Now, since an alibi derives its potency in the defense from the fact that it involves the physical impossibility of a defendant's guilt, the alibi says, in essence, he wasn't there. Now, a purported alibi which leaves it possible for the accused to be the guilty party, is no alibi at all."

■ An instruction to the jury pertaining to the credibility of an alibi defense must be given by the trial justice with great caution. It is crucial that every effort be made to avoid language that may be construed as placing a burden of proof on a defendant. Alibi testimony, in essence, denies the fact of the defendant's presence at the scene of the crime. It is of course the burden of the state, not of the defendant, to prove every element of the crime, including the defendant's presence and participation therein, beyond a reasonable doubt. *See State v. Tillinghast*, R.I., 465 A.2d 191, 199–200 (1983).

■ Moreover, in drawing attention to the possibility that alibi evidence might be fabricated and is therefore deserving of searching scrutiny, a trial justice should carefully avoid expressing an opinion about the credibility of that testimony. It is solely within the province of the jury to make such a determination of fact. Nonetheless, this does not mean that every comment by a trial justice creates prejudice in the minds of the jurors. *See State v. McKee*, R.I., 442 A.2d 440, 443–44 (1982); *State v. De-Masi*, R.I., 413 A.2d 99, 100 (1980).

■■ In reviewing an instruction given to the jury, we must look to the entire context in which the charge was rendered. *State v. McKee*, 442 A.2d at 444. The instant instruction skirted the edge of permissibility and probably should have been recast in more neutral terms. However, under these circumstances, it fails to rise to the level of reversible error.

■ The second issue raised by defendant is that the trial justice erred in permitting a police officer to invade the province of the jury by testifying that in his opinion, prior statements of the state's witnesses were consistent with their testimony at trial. At the trial, the investigating officer testified, in pertinent part, as follows:

"Q. Sir, was his [Mansfield's] answers on that day, three months after the incident, substantially similar to the answers he gave in this courtroom yesterday?

"MR. O'BRIEN: Objection.

"THE COURT: Overruled.

"A. Yes, they were.

" * * *

"Q. And in what ways was it similar, sir?

"A. As to the details of what he had claimed took place in his statement, what he had told me the night of the confession what took place, that was consistent to what he testified to in court.

" * * *

"Q. And specifically, sir, what did you question him [Bernier] about that particular event?

"A. To any knowledge that he would have, any participation that he had dealing with this event and anyone involved with him.

"Q. And did he answer you, sir?

"A. Yes, he did.

"Q. And was his answers at that time similar to his answers on trial here—

"MR. O'BRIEN: Objection.

"Q. —to his testimony yesterday?

"MR. O'BRIEN: Objection, your Honor.

"THE COURT: Overruled. You may answer.

"A. Yes, it was.

"Q. Please describe how it was similar, sir?

"MR. O'BRIEN: Objection, your Honor. May I be heard at the side bar regarding this particular area of testimony?

" * * *

"THE COURT: Side bar, please.

" * * *

"Q. Please explain the similarities between the statement Paul Bernier gave you three months after the incident and his testimony at trial yesterday?

"A. He was consistent with the facts of who he was with. He was with Bryan Desmarais, and, how they ran into David Dunton and Barry Mansfield in Blackstone. He was consistent as to where they parked the vehicle, how they entered the building, what happened when they were in the building. He was consistent about that with the exception of the argument with the gun, that wasn't mentioned in the statement. Everything else was very consistent."

We most recently addressed this issue in *State v. Nicoletti*, R.I., 471 A.2d 613 (1984), where we stated that the trial justice committed error in allowing a police officer to testify concerning his opinion of the consistency of the description given by the complaining witnesses at trial in identifying the defendant with that given earlier on the night of the crime. *Id.*, 471 A.2d at 617. As we therein observed:

"The opinion testimony must actually aid the jury in its decision making. If the jury is as capable of comprehending and understanding facts and of drawing proper conclusions from them as is the witness, no need for the opinion testimony exists. *Barenbaum v. Richardson*, 114 R.I. 87, 90–91, 328 A.2d 731, 733 (1974). *See also State v. Castore*, R.I., 435 A.2d 321, 326 (1981). The police officer's testimony concerning his opinion of the description given by the complaining witnesses was based on facts that the jurors could easily and independently have analyzed, after which they *could* have drawn their own conclusions. The opinion of the police officer merely puts unnecessary and irrelevant evidence before the jury. * * * The jury had to resolve the discrepancies in the witnesses' descriptions and identification in order to return a verdict of guilty. The police officer's testimony evaluating and analyzing the accuracy of their identification would therefore have been a critical factor in the jury's resolution and verdict. *Id.*, 471 A.2d at 617.

The defendant in the case at bar was equally prejudiced by the allowing of opinion testimony by a police officer about the consistency of the testimony of prosecution witnesses at trial with statements given to him three months after the incident in question. The assessment of the credibility of a witness's testimony is clearly within the purview of the jury. *State v. Castore*, R.I., 435 A.2d 321, 326 (1981). Conclusions about whether the state's witnesses' testimony at trial was consistent with their prior statements were determinations that the jury should have made for itself. As in *Castore*, *supra*, the testimony in the instant case amounted to nothing more than an assessment of credibility invading the jury's province. The admission of the police officer's opinion concerning the consistency of prior statements and trial testimony in effect constituted the placing before the jury of his conclusions concerning the credibility of these witnesses. Since the issue of credibility was crucial in this case as it was in *Nicoletti*, *supra*, we cannot conclude that the erroneous admission of this testimony constituted harmless error. Thus, the principles enunciated in *Nicoletti* are controlling in respect to the determination of this case. The improper encroachment into the fact-finding function of the jury on the issue of credibility of witnesses requires reversal of the conviction.

For the reasons stated, the defendant's appeal is sustained in part and denied in part. The judgments of conviction are vacated, and the papers in the case are remanded to the Superior Court for a new trial.