**STATE**

v.

**Charles FENNER.**

**No. 85–49–C.A.**

Supreme Court of Rhode Island.

Jan. 17, 1986.

Arlene Violet, Atty. Gen., Constance Messore, Spec. Asst. Atty. Gen., Mary Rogers, Spec. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Paula Rosin, Asst. Public Defenders, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the defendant's appeal from judgments of conviction after jury trial of assault with intent to murder, conspiracy to commit murder, and possession of a sawed-off shotgun. In respect to these charges, the defendant, Charles Fenner (Fenner), was sentenced to an aggregate of forty years' imprisonment. We affirm the judgments of conviction. The facts of the case are as follows.

On August 25, 1979, at about 9:30 P.M., Leo Duffy (Duffy), who was employed as a correctional officer at the Adult Correctional Institutions (ACI), medium-security section, was returning to his home from a part-time job at the Peerless Liquor Store in Providence. He emerged from his automobile and walked toward his front door, carrying a pizza and some beer that he had purchased. Without warning, a person dressed in dark clothing stepped out of the shelter of the left side of the house, pointed a shotgun at Duffy, and shot him in the chest. Duffy fell to the ground; the attacker again pointed the gun at Duffy, who moved quickly to avoid a second shot aimed at his head. Duffy took refuge behind a large rock located on his front lawn, drew his own pistol, and fired at his assailant.

After an exchange of gunfire his attacker entered an automobile, which was parked nearby with another person behind the wheel. This automobile and its occupants hurriedly left the scene. Duffy recovered from his wounds after an operation and a hospitalization of approximately one month's duration. When questioned, Duffy recalled that he had had an altercation at the ACI with one Gino Fountaine (Fountaine) arising out of a breach of prison rules on or about May 15, 1978.

Testimony at the trial disclosed that Fountaine had devised a plan to kill Duffy. Evidence of the conspiracy came largely from William Salisbury (Salisbury), who had a discussion with the State Police while he was being held at the ACI on a charge of robbery. At this time Salisbury had an extensive record and was suspected of a number of crimes, including the murders of persons in Florida and a man in Rhode Island.

Salisbury told the State Police that he had been approached by one Lawton on behalf of Fountaine to carry out a revenge killing of Duffy. Lawton engaged the services of defendant to work with him and Salisbury to effectuate the killing. The three men planned the killing very carefully. Salisbury testified that Fountaine had been a member of a group that carried out murders for hire.

Salisbury prepared for the killing by stealing two automobiles to be used as getaway vehicles and also lining up a legitimately borrowed automobile provided to him by Lawton. Apparently, Salisbury and Fenner intended to keep the automobile with Lawton's permission after the killing had been accomplished.

The weapons chosen were either sawed-off shotguns or regular shotguns. Fenner was designated the triggerman. Salisbury was the driver. After the shooting, Salisbury drove the first getaway car, then shifted to the second car. Salisbury and Fenner then attempted to transfer to the third automobile; but when the third automobile failed to start, the two men continued their flight in the second car. Salisbury testified that Fenner, during this por-

tion of the getaway, took the sawed-off shotgun and threw it out the automobile window. The gun accidently discharged when it hit the ground. The evasive tactics of Salisbury and Fenner were sufficiently successful that no suspect or suspects were found by the police until Salisbury offered to testify. One of Salisbury's express reasons for testifying was that he heard he was scheduled to be a victim of the murder-for-hire group of which Fenner and Lawton were members. The defendant suggests that Salisbury's willingness to testify was based upon the lenient treatment which he received in Florida and Rhode Island in return for his cooperation.

In support of his appeal, defendant raises a number of issues, each of which will be considered in the order in which they were presented in defendant's brief.

## I

WAS THE STATEMENT MADE BY THE TRIAL JUSTICE THAT DEFENDANT WAS "IN CUSTODY" REVERSIBLE ERROR?

Prior to the selection of the jury in defendant's case, the trial justice disposed of a preliminary motion under Rule 48(b) of the Superior Court Rules of Criminal Procedure relating to unnecessary delay. She then engaged in pretrial discussion with counsel in chambers. In the course of this discussion, she informed counsel of certain matters that she would impart to the jury. Among these matters was a proposed disclosure that defendant was in custody. At that time defense counsel raised no objection.

Just prior to the afternoon recess, the trial justice made the following statement in respect to Fenner's custody:

"In this particular case, the defendant, Mr. Charles Fenner, is in custody, and I want you to understand that very often people are in custody, that is to say, in the custody of the Warden of the Adult Correctional Institutions, because they cannot post bail, and it's important for you to recognize that the mere fact that a defendant is in custody should not prejudice you against this defendant nor generate sympathy for this defendant. It is a neutral fact in this case and I want you to so regard it."

No objection was raised by defense counsel immediately upon the making of this statement. However, following the afternoon recess, defense counsel did raise an objection to the foregoing statement and requested the trial justice to pass the case because of what he termed the extremely prejudicial effects of those comments. The trial justice responded that she had made such comments, not for the purpose of prejudicing defendant in the eyes of the jury, but for the purpose of making certain that the jurors should not in any way be prejudiced against defendant in the event that they might inadvertently learn that defendant was in custody by seeing him led into the courtroom or being transported in a van when leaving the courthouse. She also noted that upon his being brought to and from the courthouse in the prisoners' van, the jurors might see defendant handcuffed and guarded. Consequently, her comments were designed to neutralize the effect of any such inadvertent observation of which neither counsel nor the trial justice might ever be officially informed.

The defendant argues that these comments were inherently prejudicial and cites particularly *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). In that case the Supreme Court of the United States, speaking through Chief Justice Burger, expressed the opinion that requiring the defendant to stand trial in prison garb was inherently prejudicial. However, the Court did not reverse the conviction, owing to the failure of defense counsel to raise the issue by objecting at the time of trial.

In a series of cases, courts have held that placing a defendant in a special prisoners' dock, in the absence of a special security need, impinges upon the presumption of innocence, *Young v. Callahan*, 700 F.2d 32

(1st Cir.1983); *Walker v. Butterworth*, 599 F.2d 1074 (1st Cir.1979), or that handcuffing a defendant to a chair in the sight of a jury should be implemented only if there is a rational or justifiable basis, *People v. McCloud*, 69 A.D.2d 597, 416 N.Y.S.2d 337 (1979). In *State v. Correra*, — R.I. —, 430 A.2d 1251 (1981), we expressed concern about the leading of a witness into the courtroom in handcuffs because of its possible influence on a juror's judgment of credibility of the witness, and we suggested that this practice should be avoided if possible. We also observed that it was the obligation of defense counsel to object to the use of handcuffs in respect to such a witness as opposed to simply noting for the record that the witness had been so restrained.

Actually, the closest case to the present case, although not cited by counsel, is *State v. Pugliese*, 117 R.I. 21, 362 A.2d 124 (1976), in which a conviction was reversed because a witness stated that he had been approached by " 'Pugliese's friend from up at the A.C.I.' " *Id.* at 23, 362 A.2d at 125. In that case the trial justice did not consider the remark prejudicial and therefore did not give any cautionary instruction to the jury. This court also emphasized the brevity of both eyewitnesses' observations of the alleged robber's face and, therefore, the possibility that Pugliese's connection with the ACI may have influenced a very close decision. *Id.* at 27, 362 A.2d at 127.

Neither counsel has cited to us, nor have we found, a case that precisely coincides with the issue presented in the case at bar. Here we have a situation in which the trial justice sought to forestall the formulation of any inference based upon the inadvertent learning by jurors that defendant was in custody. She admonished the jury that the fact of custody should in no way dilute the presumption of innocence. Certainly, the entire rationale underlying the structure of jury trials and the lyrical deference that is paid to jury findings rests upon the proposition that jurors will obey the admonitions of the trial justice and will apply the law as given to them by the justice presiding. We are of the opinion that the comments made by the trial justice were not so inherently inflammatory or prejudicial as to render the jurors incapable of following the instruction that this fact was indeed to be regarded as neutral.

■ However, as guidance for trial courts in the future, we observe that it should be the obligation of a trial justice to inform counsel in advance if he or she intends to advise prospective jurors or jurors who have been selected to serve on a particular case that the defendant is in custody for the purpose of neutralizing any inference that might otherwise be formed. In the event that counsel objects to such an admonition, he or she has an obligation to inform the trial justice forthwith before the admonitions have been given. In such a situation, the trial justice should forego making such a statement to the jurors, but the defendant assumes the risk that by some inadvertence he or she may be seen in the course of being transported from the ACI to the courthouse or otherwise be seen to be in custody in circumstances of which the court might not be aware and in circumstances where this observation might not be called to the attention of either the court or counsel. In other words, the defendant should have his choice in determining whether this type of instruction should be given, but that choice should be exercised before the admonition is given, not afterward. The defendant, having exercised his choice, is then precluded from asserting as error the fact that the jurors might have seen him in custodial posture outside the courtroom or being transported in the prisoners' van. Of course, if the trial justice becomes aware of such an observation, a cautionary instruction should be given at the defendant's request.

■ In sum, taking into account all of the circumstances of this case and the lack of initial objection, we are of the opinion that the trial justice did not commit reversible error in the admonitions given to the

jury and in refusing thereafter to pass the case.

## II

DID THE TRIAL JUSTICE ERR IN DECLINING TO DISMISS THE INDICTMENT FOR UNNECESSARY DELAY IN BRINGING THE CASE TO TRIAL PURSUANT TO RULE 48(b) OF THE SUPERIOR COURT RULES OF CRIMINAL PROCEDURE?

■ In the case at bar, defendant was indicted in 1981 together with Fountaine, Lawton, and Salisbury for the attempted assassination of Duffy. The defendant was arraigned on October 20, 1981, and at that time was represented by William Dimitri, Esq. Mr. Dimitri moved to withdraw as counsel on March 19, 1982, but then withdrew his motion on April 5, 1982. On April 14, 1982, Mr. Dimitri moved to vacate an impending trial date on the ground that his client lacked competence to stand trial because of a medication he was taking at the time. The trial date was vacated on April 26, 1982, and defendant was examined to determine if he was physically and mentally capable of standing trial. On May 12, 1982, a report was received from the health-care administrator of the ACI stating that defendant had undergone physical and psychiatric examinations and was determined to be competent to stand trial.

On January 14, 1983, Mr. Dimitri again filed a motion to withdraw, which was granted; and as a consequence, the case was passed on the trial date that had been designated as January 21, 1983.

Thereafter, Richard Casparian, Esq., of the Office of the Public Defender, entered an appearance on May 25, 1983. From that time forward, the record becomes ambiguous. Mr. Casparian filed a motion for speedy trial on August 3, 1983. The case was set down for trial on a number of occasions but was continued for reasons that do not appear of record. The defend-

ant eventually went to trial on February 20, 1984. The defendant points out that the total period of time from arraignment to trial was thirty months, or two and a half years.

We begin our analysis by reiterating our settled rule that a motion to dismiss under Rule 48(b)[1] is directed to the sound discretion of the trial justice. A decision either to grant or to deny such a motion will not be disturbed by this court in the absence of a finding that the trial justice abused such discretion. *State v. Brown,* — R.I. —, 486 A.2d 595 (1985); *State v. Macaskill,* — R.I. —, 475 A.2d 1024 (1984); *State v. Austin,* — R.I. —, 462 A.2d 359 (1983). In *Brown,* we pointed out that it is the obligation of the defendant to show that none of the delay is attributable to him. Thereupon, the burden shifts to the state to show that the delay was necessary. *State v. Brown,* — R.I. at —, 486 A.2d at 601–02.

In the case at bar, the trial justice specifically found that defendant failed to show that he was not responsible for a significant portion of the delay up to August 1983 because of his difficulties with counsel. Again, on November 14, 1983, when the case was assigned to the trial calendar, defendant's counsel was engaged in another trial. The defendant argues that this unavailability should also be attributed to the state because the court rather than the Public Defender scheduled trials. At most, this fact would constitute a neutral event for which neither the state nor defendant would be responsible.

■ Our cases on this subject indicate quite clearly that Rule 48(b), which is broader than the right to speedy trial guaranteed by the Sixth Amendment to the Constitution of the United States, *State v. Dionne,* — R.I. —, —, 474 A.2d 445, 447 (1984), requires a showing that no portion of the delay was attributable to a defendant's actions. *State v. Brown,* — R.I. at

---

1. This rule was repealed by the Superior Court by order dated June 17, 1982, and approved by order of this court dated November 21, 1984, but was in effect at the time of this trial.

——, 486 A.2d at 602; *State v. Isaac,* —— R.I. ——, ——, 477 A.2d 62, 64 (1984). In the case at bar, the finding of the trial justice that defendant was responsible for a significant portion of the delay made him ineligible for the benefits of Rule 48(b), including absolution from the necessity of showing prejudice. No prejudice was shown in this case.

As a consequence, we are of the opinion that the trial justice did not abuse her discretion in denying the motion to dismiss under Rule 48(b).

### III

### DID THE TRIAL JUSTICE ERR IN DECLINING TO GIVE SPECIFIC INSTRUCTIONS TO THE JURY RELATING TO THE CREDIBILITY OF WILLIAM SALISBURY?

■ Counsel for defendant requested two specific instructions from the trial justice relating to Salisbury's credibility in light of his motivation to prevaricate as a result of promises of benefits for his testimony. These requests were as follows:

#### "REQUEST NO. 18

If the jury believes from the evidence that any person was induced to testify in this case by any promise from further punishment, or that any hope was held out or entertained by him that he would be rewarded or in any wise benefit if he implicated the defendant in the crimes charged herein, they [*sic*] jury *must take such fact into consideration* in determining what weight should be given to the testimony, closely scrutinize it and unless they can reconcile it with the truth, completely reject it." (Emphasis added.)

#### "REQUEST NO. 19

In weighing the testimony of a witness who testifies under any promise of reward, the jury *must consider* that such promise of reward itself is a strong impelling reason for the witness to color

and fabricate his testimony, and that such testimony must be weighed with a great deal of care and circumspection." (Emphasis added.)

However, she did give general instructions to the jury on the issue of credibility. These general instructions are set forth in pertinent part as follows:

"All your life you have learned techniques for sizing up people, you have learned to tell when someone is telling you the truth, you have learned to tell when someone is exaggerating, and there is no reason why you can't use all those techniques in determining whether or not you want to believe witnesses who have testified in a trial. Furthermore, you are even allowed to look at a witness, look at his demeanor, his or her demeanor. Did you get a sense that the witness was trying to be open, honest, candid? If you get a sense that the witness was trying to hide something or to be evasive, you are allowed to take that into account. And so, it is proper for a jury to consider a witness' bearing, a witness' demeanor. You know that you are entitled to take into consideration the fact that a witness at some prior time was convicted of a crime. That bears on credibility as well. You are allowed to take into account the witness' appearance, the witness' age * * *. You are allowed to determine whether you feel that witness, any witness now who took the stand, had any prejudice or bias for or against either side. You are entitled to determine whether the witness would have a motive to tell the truth or a motive to lie. You are allowed to ask yourself, 'Well, why would a witness lie? Why would a witness tell the truth.' You may also determine whether or not the witness has been shown to have said something inconsistent with what the witness now says. What you are allowed to do, in other words, is test and assess all witnesses by using what you have derived from your own experiences in life, by looking back upon the witness'

demeanor and bearing and by determining whether the witness appeared to be answering directly or evasively."

Following the giving of her charge to the jury, the trial justice was apprised of defendant's objection to her charge on the ground that she had not given defense request numbers 18 and 19. After colloquy with defense counsel, the trial justice gave a supplemental instruction to the jury as follows:

"There's no question that the bottom line in this case is whether or not you choose to believe the State's witness, William Salisbury * * *. I told you that you can look into the issue of motive, that you can size up the person's demeanor. The jury is entitled to determine, in weighing the testimony of a witness like Mr. Salisbury, who has testified with certain promises made to him, a jury is entitled to consider whether that promise or reward itself is a strong or impelling reason for a witness to lie or to fabricate or color his story * * *."

It is a familiar rule in this jurisdiction that a trial justice is not required to give specific instructions requested by a party so long as the charge of the trial justice adequately covers the subject matter relating to the request. *State v. Appleton,* — R.I. —, 459 A.2d 94 (1983); *State v. Manning,* — R.I. —, 447 A.2d 393 (1982); *State v. Ahmadjian,* — R.I. —, 438 A.2d 1070 (1981).

In our opinion, the trial justice's instructions that the jurors could consider the motivation of witness Salisbury based upon promise or reward to lie or fabricate or color his story were ample in order to alert the jury to this problem. An examination of defendant's requests discloses that they almost amount to a peremptory instruction that Salisbury's testimony be disregarded in the event that it be found that he was induced to testify by promises of leniency. Although the jurors were certainly entitled to take such promises and motivations into account, their acceptance or rejection of the testimony was ultimately their decision to make, free of any peremptory instructions from the trial justice.

It is not the function of a trial justice to act as advocate for either the prosecution or the defense. Counsel are given adequate opportunities to argue matters of credibility, including bias, motivation, anticipated benefits or rewards. In this jurisdiction judges are inhibited from commenting upon the evidence unless they do so in a completely impartial manner. *State v. McKee,* — R.I. —, 442 A.2d 440 (1982); *State v. DeMasi,* — R.I. —, 413 A.2d 99 (1980); *State v. Pella,* 101 R.I. 62, 220 A.2d 226 (1966). In *DeMasi,* we specifically expressed the opinion that it was not necessary for a trial justice to make, in effect, an impeaching comment upon the testimony of an erstwhile accomplice who had been granted immunity by the Attorney General. — R.I. at —, 413 A.2d at 100. The framework of the proposed requests was somewhat less than impartial. We are of the opinion that the trial justice's instructions on the issue of credibility were adequate and impartial and in no way constituted prejudicial error. Declining to give the requested instructions in the circumstances was not error.

The fact that we have not overturned convictions because a trial justice instructed a jury in relation to the need to scrutinize alibi testimony does not automatically result in an obligation upon trial justices to give such specific instructions in other cases. Indeed, it is probably better practice for a trial justice to avoid giving such instructions in respect either to alibi testimony or to accomplice testimony and to rely instead upon general instructions concerning credibility, motivation, bias, and the like. Counsel rather than the court are the appropriate agents to argue to the jury concerning the specific credibility or lack thereof of a particular witness.

Viewing the charge as a whole, we are of the opinion that the trial justice adequately instructed the jury in respect to

credibility, motive, bias, and expectation of reward.

## IV

### DID THE TRIAL JUSTICE ERR IN PERMITTING THE VICTIM, DUFFY, TO DISPLAY TO THE JURY THE WOUNDS THAT HE HAD RECEIVED AS A RESULT OF THE SHOTGUN BLAST?

■ The first count of the indictment charged defendant with assault with intent to murder. Consequently, one of the elements to be proven by the state was that defendant had a specific intent to kill the victim. *State v. Fournier*, — R.I. —, 448 A.2d 1230 (1982); *State v. Gagne*, 362 A.2d 166 (Me.1976). This intent may be inferred from the firing of a deadly weapon at a vital part of the victim's body. *Fournier, supra.* The state had the burden of proving this issue beyond a reasonable doubt. The defendant had pleaded not guilty, which placed in issue all elements of each offense charged. It is all very well for defendant now to say that he did not dispute that the crime of assault with intent to murder had been committed. However, he did not stipulate to this fact. Therefore, the state was not absolved from proving each and every element of the crime.

■ The trial justice in this case carefully considered whether the probative value of this evidence was outweighed by undue prejudice. She found, after a preliminary hearing, that the sight of this wound was not of such a nature as to inflame the jurors and therefore prejudice them beyond the ordinary prejudice that is always sustained by the introduction of relevant evidence intended to prove guilt. *See State v. Cline*, 122 R.I. 297, 405 A.2d 1192 (1979) (in which we held that a defendant had no right to be insulated from relevant evidence). The wound in this case was relevant in that it tended to prove an important element of the state's case, namely, that defendant had fired a lethal weapon at a vital part of the victim's body. We have reviewed the photographs of the victim's scar which were made a part of the record following this display. We agree with the trial justice that this wound was not of such a nature as to inflame the jury beyond the probative value that the existence of such a wound should properly have. Consequently, the trial justice did not err in allowing the victim to display his scar to the jury.

## V

### DID THE TRIAL JUSTICE ERR IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT 3 OF THE INDICTMENT WHICH CHARGED DEFENDANT WITH POSSESSION OF A SAWED-OFF SHOTGUN?

■ In the case at bar the trial justice, in response to a motion for judgment of acquittal, stated that evidence existed that defendant deliberately and knowingly held the sawed-off shotgun in the getaway car. She noted that the sawed-off shotgun was not obscured in any way, that its size and condition were readily seen by defendant, and that if one were to believe Salisbury's testimony, defendant knowingly took possession of the sawed-off shotgun and discarded it. The trial justice relied upon the case of *State v. Benevides*, — R.I. —, 425 A.2d 77 (1981), for the proposition that evidence of possession, for however brief a time, is sufficient to sustain such a charge. In this reliance, the trial justice was correct. "Knowing or conscious contact with an item, albeit fleeting and momentary, is sufficient to constitute possession." *Id.* at —, 425 A.2d at 80; *see also State v. Gilman*, 110 R.I. 207, 217–18, 291 A.2d 425, 432 (1972). It is a well-settled rule in this jurisdiction that on a motion for judgment of acquittal, the trial justice must review the evidence in the light most favorable to the prosecution, drawing all reasonable inferences consistent with guilt. *See, e.g., State v. Benevides*, — R.I. —, 425 A.2d 77 (1981); *State v. Smith*, 121 R.I.

495, 401 A.2d 41 (1979); *State v. Distante*, 118 R.I. 532, 375 A.2d 212 (1977). Applying this familiar standard, the trial justice was correct in determining that sufficient evidence existed that, if believed and if reasonable inferences were drawn therefrom, would warrant a jury's finding beyond a reasonable doubt that defendant had had possession of a sawed-off shotgun.

Consequently, the trial justice did not err in denying the motion for judgment of acquittal on this count of the indictment.

For the reasons stated, the appeal of the defendant is denied and dismissed. The judgments of conviction are affirmed, and the papers in the case may be remanded to the Superior Court.