STATE

v.

**Michael OLINK.**

No. 84–557–C.A.

Supreme Court of Rhode Island.
April 3, 1986.

Arlene Violet, Atty. Gen., Timothy Conlon, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Paula Rosin, Asst. Public Defenders, for defendant.

## OPINION

SHEA, Justice.

The defendant, Michael Olink, appeals from his conviction in the Superior Court on three counts of robbery of controlled substances. Olink was first tried before a jury in February of 1983. He was acquitted of assault with intent to rob, but a mistrial was declared on the robbery charges after the jury was unable to reach a verdict. A second jury trial was held on those charges, and Olink was found guilty. After denying his motion for a new trial, the trial justice sentenced Olink to thirty years on each count, with fifteen years suspended and fifteen years probation, these sentences to be served concurrently. Olink now appeals to this court. We reverse.

The indictment charged defendant with robbing the Hope Valley Pharmacy of controlled substances on three occasions: September 21, 1979; January 7, 1980; and June 1, 1981. The case was tried both by the prosecution and by the defense on the premise that the pharmacy was robbed by the same individual on all three occasions.

On all three occasions, Carl Ashworth, the pharmacist at the Hope Valley Pharmacy, was robbed by a white male armed with a knife. The robber demanded Dilaudid and other drugs. Ashworth was working at the pharmacy with a different clerk during each of the robberies. After the last robbery, Ashworth and Paulette Andrews, the clerk working during that robbery, went to a Providence Police Station to assist the police in creating a composite drawing of the robber.[1] While examining photographs for this purpose, Andrews and Ashworth came across a photograph of Olink and as a result identified him as the robber. The next day they each identified Olink in separate lineups.

Ashworth and all but one clerk described the robber in a consistent manner. Paulette Andrews, the clerk working at the pharmacy on June 1, 1981, said that the robber was stocky with a round, babyish, clean-shaven face. She testified that he weighed 170 to 180 pounds, had short brown wavy hair, and was wearing blue painter pants and a grey sweatshirt. She estimated his height to be five foot five to five foot six inches. Ashworth testified that the robber was about five foot six to five foot eight inches tall and weighed 160 to 180 pounds. He stated that in 1979 the robber had dark curly hair, in 1980 collar-length wavy hair, and in 1981 wavy hair pulled back off his face. Ashworth and Andrews stated that although the robber was "husky" or "stocky," he was not fat and did not weigh 230 pounds. Ashworth said that he did not consider himself to be an expert at estimating weights but when

asked to estimate Olink's weight at trial, he approximated Olink's weight at 250 pounds. At trial Olink actually weighed 245 pounds.

Theresa Sweeten, the clerk working during the 1979 robbery, testified by deposition that the robber was five foot eight inches tall, with black curly or wavy hair, weighed 150 pounds, was in his mid-twenties, and had a babyish face. She stated that it was impossible "that the robber weighed 230 pounds." Nancy Vaughn, the clerk present during the 1980 robbery, testified for the defense that the robber was five foot three to five foot five inches tall, weighed about 175 pounds, had light-brown shoulder-length wavy hair, and had a babyish, clean-shaven face. She estimated his age to have been between eighteen and twenty years old.

Ten days after the 1979 robbery, in connection with an unrelated misdemeanor, the Providence Police photographed Olink and weighed and measured him. At that time he was five foot nine inches tall, weighed 230 pounds, and was nineteen years old. This photograph became the basis of Ashworth's and Andrews's identification of Olink in 1981. In 1981 he weighed about 220 pounds, and at trial Olink testified that he was still five foot nine inches and weighed 245 pounds.

Olink presented an alibi defense for June 21, 1981. This is the date upon which the last robbery occurred at about noon. Olink, his aunt, his cousin, and a friend testified about Olink's whereabouts on the day of the robbery. Angeline Palumbo, Olink's aunt, testified that Olink was living with her and her daughter at 18 Europe Street, Providence, and that he had been living there for several years before 1981. She stated that he was home on June 21, 1981, at 7:45 a.m. when she went to work. He arrived at his mother's house, which was located around the corner, for lunch some-

---

1. This procedure involved the use of photographs, apparently chosen at random, to assist Ashworth and Andrews with the job of specifically describing the robber's facial features, such as the nose, cheek bones, and so on. They had examined eighty-eight pictures in this manner, when they discovered Olink's photograph and identified him as the robber.

time between the hours of noon and 12:30 p.m. She testified that each day she, her daughter, and Olink had lunch with Olink's mother. Donna Palumbo, the daughter, said Olink was sleeping when she woke up at 10 a.m., that he awoke at about noon, and that he went to his mother's house for lunch, as he did every day. Michael Olink testified that he arrived at his mother's at 12:15 p.m. and stayed for an hour or two before meeting friends. His friend, Louis Falocco, said that he and others were on Federal Street with Olink from 3 p.m. to 5 p.m. on June 21, 1981.

Olink testified that the next day his mother was contacted by the police and that she told him he was wanted by the police. Falocco drove him to the station. At the station, Olink denied robbing the pharmacy and detailed his whereabouts and his witnesses to the police. Olink was then arrested, and he consented to a search of his home. Nothing was found linking him to the robberies. At trial the jury returned verdicts of guilty on all three counts.

On appeal, Olink argues that the photograph through which he was initially identified by Ashworth and Andrews should have been suppressed and that this, in turn, would require suppression of the lineup and in-court identifications as well because they are "fruits" of the photograph.

Olink was originally photographed in 1979 by the Providence police in connection with misdemeanor charges that are unrelated to this case. The complaint was filed in 1980 pursuant to G.L. 1956 (1969 Reenactment) § 12–10–12, as amended by P.L. 1978, ch. 296, § 1.[2] He maintains that a "filing" of that complaint against him is equivalent to being "otherwise exonerated" under § 12–1–12, as amended by P.L. 1984, ch. 341, § 2. Therefore, he contends that the photograph should have been destroyed under § 12–1–12, which provides:

"Destruction of records of persons acquitted.—*Any fingerprint, photograph, physical measurements or other record of identification,* heretofore or hereafter taken by or under the direction of the attorney general, the superintendent of state police, the member or members of the police department of any city or town or any other officer authorized by this chapter to take the same, of a person under arrest, prior to the final conviction of such person for the offense then charged, *shall be destroyed by the officer or department having the custody or possession thereof within forty-five (45) days after said acquittal or other exoneration if such person is acquitted or otherwise exonerated from the offense with which he is charged,* provided, that such person shall not have been previously convicted of any offense involving moral turpitude. Any person who shall violate any provision of this section shall be fined not exceeding one hundred dollars ($100)." (Emphasis added.)

Had the photograph been destroyed, it would not have been in the State Police records and Ashworth and Andrews would not have seen it. Olink suggests that the remedy for this wrongful retention of the photograph is to suppress the photograph along with the identification testimony stemming from it.

---

**2.** General Laws 1956 (1969 Reenactment) § 12–10–12, as amended by P.L.1978, ch. 296, § 1 provides:

"Subject to any other provisions of law relative to the filing of complaints for particular crimes, any judge of the district court or superior court may place on file any complaint in a criminal case other than a complaint for the commission of a felony or a complaint against a person who has been convicted of a felony or a private complaint. The court may in its discretion require, as a condition of

such filing, the performance of services for the public good or may attach such other conditions thereto as said court shall determine. If no action is taken on said complaint for a period of one (1) year following said filing, said complaint shall be automatically quashed and destroyed. No criminal record shall result therefrom, provided however, that in any civil action for a tort, a plea of guilty or a finding of guilty should be admissible notwithstanding the fact that said complaint has been filed."

Although a dismissal of charges has been held to be an "exoneration" within the meaning of the section, *Coalition of Black Leadership v. Doorley*, 349 F.Supp. 127 (D.R.I.1972), Olink's plea of nolo contendere to the complaint cannot be considered an exoneration. This court has held that a plea of nolo contendere constitutes a confession of guilt or a guilty plea and that once entered, it is as much a conviction against the pleader as a jury's guilty verdict would have been. *State v. Gobern*, 423 A.2d 1177 (R.I.1981); *Nardone v. Mullen*, 113 R.I. 415, 322 A.2d 27 (1974). Moreover, § 12–1–11 expressly includes individuals who plead nolo contendere as being within the class of people about whom records containing photographs, fingerprints, and a general physical description are to be kept by law enforcement officials.[3] The filing of a complaint is a disposition tool that, in appropriate cases, affords defendants the opportunity to make a new beginning without carrying forth the weight of a criminal record for the rest of their lives. The fact that a complaint was filed after the plea was made does not transform it into an exoneration under the statute. Consequently, we find Olink's assertion that the photograph should have been destroyed and the identification based upon it suppressed to be without merit.

Olink also argues that the trial justice's instructions to the jury on the issue of his alibi were erroneous and unduly prejudicial. The trial justice instructed the jury on the defense of alibi and the method by which it should assess eyewitness identification. As part of the alibi instruction, the trial justice included the admonition that alibi defenses should be "carefully examined and scrutinized." He stated:

"Remember, the defendant is not required to prove his innocence, nor is he required to offer evidence of any kind, nor to disprove or explain anything; nor, as in this case, is he under a duty to prove an alibi. But there is an alibi in evidence and it should be carefully examined and scrutinized. Give it careful consideration. *Of course, if the defendant proves that he was somewhere else on the date and time that he was charged with, then he's entitled to a finding of not guilty.*" (Emphasis added.)

In explaining reasons for disbelieving a witness, the trial justice also warned the jurors that "occasionally, because of the relationship or friendship of a witness and a party, the witness may be inclined not to tell the truth in hopes of assisting a friend." The defense objected to both of these instructions but did not object to that part of the alibi charge that related to the burden of proof on an alibi defense.

Olink alleges that these instructions to the jury were unduly prejudicial and that the instruction regarding the burden of proof was incorrect. The state argues that Olink failed to preserve these issues for appeal under Rule 30 of the Superior Court Rules of Criminal Procedure, which states that "[n]o party may assign as error any portion of the charge or ommission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of [the] objection." The Rule 30 requirement has been addressed on numerous occasions. *See, e.g., State v. DeCiantis*, 501 A.2d 365 (R.I.1985); *State v. Manocchio*, 497 A.2d 1 (R.I.1985). In many of these cases, we have refused to address the merits of the defendants' allegations of error because mere objection by number to the jury charge is insufficient to preserve the issue for appellate review. Based upon our read-

---

**3.** Section 12–1–11 provides in pertinent part: "Photographs and descriptive information as to persons convicted. In the case of every offense for which an indictment has been found or an information filed and in which the offender has been found guilty and sentenced, or has pleaded guilty or nolo conten-

dere, the attorney-general shall cause to be taken a photograph, and the name, age, weight, height, and a general description of such offender, and his fingerprints in accordance with the fingerprint system of identification of criminals and a history of the offender as shown upon trial."

ing of the record, we do not find this to have been the case in Olink's trial. Although the grounds for the objection could have been stated more clearly, we find that they were sufficient to preserve the issue for appeal. We shall not require an objection to be so detailed that citation to authority or a lengthy dissertation is necessary. Rather, the objection should be reasonably calculated to alert the trial justice of the nature of the alleged error, and it should be stated with some specificity.

■■■■ Having determined that the issue concerning the propriety of the "careful scrutiny" alibi instruction is properly before us, we now address its merits. It is well settled that, "[i]n charging the jury, the trial justice is obligated to avoid confusing or misleading instructions. * * * Challenged instructions must be evaluated as a whole in light of the meaning and interpretation that a jury composed of ordinary, intelligent lay persons would give them." *Hueston v. Narragansett Tennis Club, Inc.*, 502 A.2d 827, 829 (R.I.1986). *See also State v. Fenner*, 503 A.2d 518 (R.I.1986); *State v. Desmarais*, 479 A.2d 745 (R.I. 1984); *State v. McKee*, 442 A.2d 440 (R.I. 1982).

Over the past several years, this court has become increasingly wary of "heightened scrutiny" instructions on the issue of the alibi defense. Recently we rejected the necessity of such an instruction concerning the testimony of an accomplice. *State v. Fenner*, 503 A.2d 518 (R.I.1986). In that case we said that "[i]t is not the function of a trial justice to act as advocate for either the prosecution or the defense. Counsel are given adequate opportunities to argue matters of credibility, including bias, motivation, anticipated benefits or rewards. In this jurisdiction judges are inhibited from commenting upon the evidence unless they do so in a completely impartial manner." *Id.* at 525.

In *State v. McKee*, 442 A.2d 440 (R.I. 1982), we held that, in the circumstances, a similar alibi instruction was not unduly prejudicial to the defendant, especially in light of the trial justice's abstention from commenting upon the credibility of any of the witnesses in particular. We noted that the trial justice must avoid influencing the jury in its duty to find facts by indicating the court's opinion on the evidence, but because the trial justice instructed the jury to disregard the testimony of the police officer, who was the prosecution's key witness, if it found the testimony to be unworthy of belief, we found that the instruction, when viewed as a whole, was not reversible error.

In *State v. Desmarais*, 479 A.2d 745 (R.I.1984), we observed that an alibi defense merely negates the element of the defendant's presence and participation in the crime; it does not in any way diminish or shift the state's burden of proving each and every element of the offense. *See also State v. Tillinghast*, 465 A.2d 191 (R.I. 1983). We observed that

> "[a]n instruction to the jury pertaining to the credibility of an alibi defense must be given by the trial justice with great caution. It is crucial that every effort be made to avoid language that may be construed as placing a burden of proof on a defendant.
>
> "Moreover, in drawing attention to the possibility that alibi evidence might be fabricated and is therefore deserving of searching scrutiny, a trial justice should carefully avoid expressing an opinion about the credibility of that testimony. It is solely within the province of the jury to make such a determination of fact." *Desmarais*, 479 A.2d at 747.

As recently as our decision in *State v. Fenner*, 503 A.2d at 525, we again advised the trial court that

> "[i]ndeed, it is probably better practice for a trial justice to avoid giving such instructions in respect either to alibi testimony or to accomplice testimony and to rely instead upon general instructions concerning credibility, motivation, bias, and the like. Counsel rather than the court are the appropriate agents to argue to the jury concerning the specific credi-

bility or lack thereof of a particular witness."

Furthermore, instructions to the effect that alibi defenses should be carefully scrutinized have little to recommend them because, to the extent that they actually influence a jury to look at a defense with a jaundiced eye, they are not permissible under *Desmarais.* Conversely, if the language does not in fact influence the jury, it is a futile instruction that adds nothing to the factfinder's deliberations.

 In this case the trial justice gave the "careful scrutiny" alibi instruction and included a statement about the burden of proof in an alibi defense that was internally directly inconsistent. The statement was at best confusing; at worst, it incorrectly placed the burden of proving the alibi on Olink. This is precisely the danger that the court warned against in *Desmarais,* and we find that the instruction unduly prejudiced Olink. Therefore, we today hold that in the future, use of the "careful scrutiny" alibi instruction may well be considered to be reversible error. This, we believe, will eliminate the risk that the "cautionary admonition might be considered by the jury as a judicial impeachment of witness[es]," *State v. DeMasi,* 413 A.2d 99, 100 (R.I.1980) and leave the judgment on the credibility of an alibi defense where it properly belongs—in the exclusive domain of the jury after counsel for the parties have been given a full opportunity to address the evidence in their final arguments.

For these reasons, the judgment of conviction is vacated and the case is remanded to the Superior Court for a new trial.

BEVILACQUA, C.J., did not participate.